**STATE of Missouri, Respondent,**

v.

**Patsy J. URBAN, Appellant.**

**No. WD 40902.**

Missouri Court of Appeals, Western District.

Nov. 6, 1990.

---

Donald L. Wolff, Clayton, William D. Rotts, Co–Atty., Columbia, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and SHANGLER and BERREY, JJ.

BERREY, Judge.

Appeal from a conviction of sexual abuse in the first degree, section 566.100, RSMo 1986, and of promoting child pornography in the first degree, section 573.025, RSMo 1986. Appellant, Patsy J. Urban, was sentenced for periods of three years and eight years respectively, said sentences to be served concurrently. The execution of these sentences was suspended and appellant was placed on probation for a period of five years.

Appellant contends that the trial court erred: (1) in denying her motion to dismiss Counts III and IV of the state's first amended information on the grounds of vagueness; (2) in giving Instruction 9, the verdict-directing instruction for Count III, as it did not contain an intent element and was also ambiguous and overbroad; (3) in refusing to give defendant's Instruction A, a converse instruction for Count III; (4) in denying her motion to dismiss in that the jury heard evidence based upon Counts I and II which were subsequently nolle prossed; (5) in denying her motion to suppress certain evidence on the basis of an illegal seizure; and (6) in excluding testimony from certain defense witnesses. The appellant also claims that the prosecutor committed prejudicial error in impeaching defense witness David Urban with a criminal conviction for which he received a suspended imposition of sentence.

On April 19, 1986, Patsy and David Urban agreed to babysit for Patsy's fifteen-month-old grandson, A.G. (David was A.G.'s step-grandfather). T.G., A.G.'s mother, dropped him off in the morning and requested that Patsy give A.G. a bath. Patsy took A.G. out to play and when they returned to the house she prepared A.G. for his bath. Patsy stripped both A.G. and herself.

Just before Patsy started to bathe A.G., David returned home. David, a professional photographer, took photographs of Patsy and A.G. playing in the nude. These photographs depict such scenes as A.G. touching Patsy's breasts, A.G. eating a miniature marshmallow off Patsy's breast, Patsy leaning over A.G. with her breasts exposed, and A.G. playing with a ball, reaching toward Patsy's pubic area.

A few weeks later, appellant took three rolls of film to K–Mart to be developed. These rolls included the pictures that David shot on April 19, even though he had the capability of developing the film in his own home studio. K–Mart sent the film on to Color Craft Corporation for processing.

David Surratt, the regional vice-president and general manager of Color Craft Corporation, was shown the film. He contacted the Boone County Sheriff's Department and subsequently sent prints and negatives from two of the rolls of film to the sheriff's department. The prints and negatives from the third roll were sent back to K–Mart.

The sheriff's department turned over the pictures to the Columbia Police Department. Detective Susan Stoltz went to K–Mart and picked up the third roll of film. She made copies using the original negatives and placed a set of copies minus the negatives back in the original envelopes and sent these back to K–Mart. K–Mart personnel were instructed to notify the police when the Urbans returned to pick up the film.

On May 2, 1986, appellant picked up the film and K–Mart immediately contacted the police. A description of appellant's vehicle (a blue van) and its license plate number was given to the police.

Officer Douglas Schwandt heard the dispatch on his radio stating that the photos had been picked up and that the person picking them up got into a blue van. He did not, however, get the license number of the van. He sighted the van and stopped it. Officer Schwandt approached the van and asked appellant, who was in the van along with her husband, whether she had picked up some photos at K–Mart. Appellant was sitting in the passenger's seat with the door partially open and the officer could see a white bag to Patsy's left side between the driver's and passenger's seats. He asked appellant, "Are these photos?" She replied in the affirmative. The officer asked to see the photos and appellant, hesitating momentarily, handed him the bag. Officer Schwandt, who had viewed the photos earlier that day at a meeting at the police station, examined the photos and realized that they were the same photos that he had seen earlier.

Appellant and her husband were taken to the police department where Officer Schwandt turned the photos over to Detective Stoltz. Appellant was then questioned after being properly informed of her constitutional rights. Appellant identified her grandson in the pictures and stated that

her husband had taken the pictures. After she had given her statement to Detective Stoltz, appellant was placed under arrest.

Appellant was originally charged with five counts including two counts of abuse of a child, one count of sodomy, one count of sexual abuse in the first degree and one count of promoting child pornography although the sodomy count was later dropped. Defense counsel filed a motion to suppress evidence and a motion to suppress statements before the trial began. Both motions were denied. Trial on the matter was had on December 17–18, 1986. The jury convicted appellant on all of the four remaining counts. The court subsequently sustained appellant's motion for a new trial as to Counts I and II stating that it did "not believe that the use of the Information charged the way it did in the instructions is a valid way of submitting the case." The state eventually filed a notice of nolle prosequi as to Counts I and II. Appellant was sentenced to three years on Count III and eight years on Count IV. Execution of the sentence was ordered suspended and appellant was placed on prohibition for a period of five years.

Appellant first contends that the trial court erred in denying her motion to dismiss Counts III and IV as these counts are impermissibly vague as they fail to state plainly, concisely and definitively the essential facts constituting the offenses charged in violation of Rule 23.01(b)(2) thereby depriving appellant of due process of law.

Rule 23.01(b)(2) mandates that the information must "State plainly, concisely, and definitively the essential facts constituting the offense charged."

The informations for Counts III and IV read as follows:

*Count III:* In violation of Section 566.-100, RSMo, committed the Class D Felony of Sexual Abuse in the First Degree, punishable upon conviction under Sections 558.011.1(4) and 560.011, RSMo, in that on or between the 1st day of April, 1986 and the 30th day of April, 1986, in the County of Boone, State of Missouri, the defendant, acting in concert with David L. Urban, subjected [A.G.] a per-

son less than twelve years old, to sexual contact, and

*Count IV:* In violation of Section 573.-025, RSMo, committed the Class B Felony of Promoting Child Pornography in the First Degree, punishable upon conviction under Section 558.011.1(2), RSMo, in that on or between the 1st day of April, 1986 and the 30th day of April, 1986, in the County of Boone, State of Missouri, the defendant, acting in concert with David L. Urban, knowing its content and character, photographed child pornography, and all against the peace and dignity of the State.

The elements of sexual abuse and of promoting child pornography are set out in section 566.100, RSMo 1986, and in Section 573.025, RSMo 1986. Respectively, they read as follows:

**566.100. Sexual abuse in the first degree.**—1. A person commits the crime of sexual abuse in the first degree if:

(1) He subjects another person to whom he is not married to sexual contact without that person's consent by the use of forcible compulsion; or

(2) He subjects another person who is less than twelve years old to sexual contact.

Section 566.100.1, RSMo 1986.

**573.025. Promoting child pornography in the first degree.**—1. A person commits the crime of promoting child pornography in the first degree if, knowing its content and character, he photographs, films, videotapes, produces, publishes or otherwise creates child pronography [sic], or knowingly causes another to do so.

Section 573.025.1, RSMo 1986.

 Initially, it must be noted that the general rule requires the filing of a motion for a bill of particulars as the appropriate remedy in instances such as this. "Failure to file a motion for a bill of particulars waives the right to later complain of lack of detail in the information, provided the alleged lack of detail does not render the information wholly insufficient." *State v. Fults,* 719 S.W.2d 46, 50 (Mo.App.1986).

When no such motion is made then this court assumes that appellant was satisfied with the facts and particulars describing the offense contained in the information. *State v. Henderson,* 750 S.W.2d 507, 515 (Mo.App.1988). Appellant's failure to request a bill of particulars acts as a waiver of any right to raise the issue of a lack of specificity on appeal. *State v. Stark,* 728 S.W.2d 301 (Mo.App.1987).

■■■ Appellant concedes that no motion for a bill of particulars was filed in the instant case. Appellant's contention that this constituted no waiver, as the information lacked essential factual elements of the crimes charged and was therefore insufficient, is simply not cognizable. A comparison of the information to the statutes shows that the language of the information tracks that of the elements required in the statute. The test for sufficiency of an indictment is whether all the essential elements of the offense as set out in the statute are contained therein and whether it apprises defendant of the facts which constitute the offense. *State v. O'Connell,* 726 S.W.2d 742, 746 (Mo. banc 1987). Generally it is enough to charge the offense using the language of the statute alleged to be violated if that statute states the elements. *Id.* Appellant complains that the term "sexual contact" is a generic term encompassing six distinct acts and the information does not allege any of these acts. Similar arguments failed in *State v. Fults, supra,* and in *State v. Stark, supra.*

In *Fults,* the defendant was charged with sodomy. He argued that because sodomy can be committed by several methods, the information should have charged one or more of the methods. *State v. Fults, supra,* 719 S.W.2d at 50. The court found this contention to be without merit. So too was the result in *Stark.* Here defendant claimed that the words "sexual intercourse" and "deviate sexual intercourse" are generic and thus the information was fatally defective. *State v. Stark, supra,* 728 S.W.2d at 302. The court found this argument to be without merit. Both cases address the defendant's failure to file a motion for a bill of particulars and both

examine the informations involved with an eye to their consistency with Missouri Supreme Court approved forms. *See State v. Stark, supra,* 728 S.W.2d at 302–303; *State v. Fults, supra,* 719 S.W.2d at 50–51.

In the instant case it is clear that appellant's argument is without merit. The information was adequate, especially in light of the failure to file a motion for a bill of particulars, because this inaction carries with it the assumption that appellant found the information adequate. Accordingly, appellant's Point I is denied.

Appellant next alleges that the trial court erred in giving Instruction 9, the verdict directing instruction for Count III, in that it did not contain an intent element and was ambiguous and overbroad. Appellant's contention must fail.

■■ At issue in the instant case is the pattern instruction MAI–CR2d 20.16.2 which was the applicable instruction at the time of appellant's trial. It reads:

**20.16.2 Sexual Abuse in the First Degree—Child Less than Twelve Years Old**

(As to Count ____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (on or about) (at about [time of day or night] on) (between the hours of [times of day or night] on) [date] in the (City) (County) of _____, State of Missouri, the defendant was not married to [name of victim], and

Second, that at that time and place the defendant subjected [name of victim] to sexual contact, and

Third, that [name of victim] was then less than twelve years old,

then you will find the defendant guilty (under Count ____) of sexual abuse in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Instruction No. 9, which was submitted at trial, correctly mirrored this pattern:

INSTRUCTION NO. 9

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between the 1st day of April, 1986, and the 30th day of April, 1986, in the City of Columbia, County of Boone, State of Missouri, the defendant was not married to [A.G.], and

Second, that at that time and place the defendant subjected [A.G.] to sexual contact, and

Third, that [A.G.] was then less than twelve years old, then you will find the defendant guilty under Count III of sexual abuse in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

■ "If an applicable criminal instruction is provided by MAI–CR, it is mandatory that the court give the instruction as written." *State v. Snyder,* 748 S.W.2d 781, 785 (Mo.App.1988). In the instant case the proper instruction was given and where the proper instruction was given, a court on appeal has no power to declare it to be erroneous. *Id.* In fact, this court just does not possess the authority to find instructions and the Notes on Use accompanying them to be erroneous where they have been adopted for standard use by the Supreme Court. *State v. Outley,* 693 S.W.2d 184, 188 (Mo.App.1985). Appellant, with the great advantage bestowed by hindsight, would invite this court to substitute MAI–CR3d 320.16.2, the new model instruction, for the one applicable at the time of appellant's trial. To do this would be to require a trial court be possessed of the powers of a crystal-ball gazing seer cognizant of the future, thus, the invitation must be declined.

■ Furthermore, to make a determination as to the existence of prejudicial error, all of the instructions as a whole must be reviewed. *State v. Sallee,* 436 S.W.2d 246, 252 (Mo.1969). Instruction No. 10 does contain the intent element. It reads:

INSTRUCTION NO. 10

As to Count III, if you do not find and believe from the evidence beyond a reasonable doubt that Patsy J. Urban, acting in concert with David L. Urban, subjected [A.G.] to the touching of the breasts of Patsy J. Urban *for the purpose of arousing or gratifying sexual desire of any person,* you must find Patsy J. Urban not guilty under Count III of sexual abuse.

(emphasis added).

Appellant's Point II is denied.

■ Appellant's next contention is that the trial court erred in refusing to give her offered Instruction A to the jury. Appellant fails to provide the text of proposed instruction except in her brief and the only reference in the transcript describes this instruction as, "the approved instruction by the Supreme Court committee titled 320.-16.2 which specifically states that the touching must be for the purpose of arousing or gratifying the sexual desires of a named person." It also should be mentioned that the proposed instruction did not go into effect until after appellant's trial.

Appellant apparently offered two different converse instructions to the charge of sexual abuse in the first degree (Count III). The trial court accepted Instruction No. 10, which was submitted by the appellant, as the proper converse instruction for Count III. In giving this instruction, the trial court acted properly. The Notes on Use in both the second and third series of MAI make it clear that a defendant is only entitled to one converse instruction per verdict director. *See* MAI–CR3d 308.02; MAI–CR2d 3.02. If more than one converse instruction is requested by the defendant then the trial court may select and give only one. MAI–CR2d 3.02. This is what the trial court did in the instant case. Appellant's Point III is denied.

■ Appellant asserts that the trial court erred by its denial of her motion to dismiss. Appellant claims that the jury was unduly prejudiced by evidence on Counts I and II of which appellant was

found guilty. Appellant was granted a new trial upon these counts and they were subsequently nolle prossed by the prosecution.

■■■ The record reveals that appellant has not preserved this issue for review. Appellant did not raise this issue in her motion for a new trial, nor was an amended motion filed to preserve the issue after these counts were nolle prossed. *See State v. Bailey,* 714 S.W.2d 590, 593 (Mo. App.1986). Points which are not properly preserved for review may be reviewed under the plain error standard. *State v. Muthofer,* 731 S.W.2d 504 (Mo.App.1987). Applying this standard to the case at hand yields a determination that no manifest injustice occurred. The evidence that the state presented at trial in support of Counts I and II also supported Counts III and IV. Appellant's Point IV is denied.

■■■ Appellant next complains that prejudicial error was committed when the prosecutor was allowed to impeach appellant's witness, David Urban, with a criminal conviction for which he had received a suspended imposition of sentence. Once again appellant has failed to properly preserve the issue for review upon appeal. No objection was made at trial. Once again, this court's review is done under a plain error standard. Using this yardstick it is clear that appellant is in error. Appellant's reliance on *State v. Frey,* 459 S.W.2d 359 (Mo.1970) is misplaced. *Frey* stands for the proposition that using convictions for which imposition of sentence was suspended to impeach is impermissible. *Id.* at 362. This is no longer true. Such impeachment is permissible now. *See* section 491.050, RSMo 1986; *State v. Brooks,* 694 S.W.2d 851 (Mo.App.1985). Appellant's Point V is denied.

Appellant next contends that the trial court erred by denying her motion to suppress evidence and motion to suppress statements. She alleges that the photographs were illegally seized by law enforcement officers without a search warrant and without exigent circumstances.

Appellant initially claims that the three rolls of film left at K–Mart to be developed and the negatives and photographs derived therefrom fall within a constitutionally protected category. Thus, appellant argues, the evidence seized was the fruit of an unlawful search and should have been suppressed under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Appellant's argument can be divided into two parts: (1) the initial seizure of the film; and (2) the seizure of the film from the automobile.

Appellant first contends that she had a subjective, reasonable and legitimate expectation of privacy in the three rolls of film left at K–Mart to be developed and the photographs and negatives derived therefrom, as measured by recognized, permitted understandings in society.

■■■ Appellant's contention is based upon the guidance provided by *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which defines the scope of the interest protected by the Fourth Amendment. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 351–352, 88 S.Ct. at 511 (citations omitted). This legitimate expectation of privacy has a two-fold requirement: (1) that a person exhibits an actual, subjective expectation of privacy; and (2) that this expectation is one which society recognizes as reasonable. *Katz v. United States, supra,* 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J. concurring).

It must also be mentioned that, "when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information." *United States v. Jacobsen,* 466 U.S. 109, 117, 104 S.Ct. 1652, 1658, 80 L.Ed.2d 85 (1984).

■■■ Appellant argues that when film is placed in sealed envelopes, left for development and processed by machine that one does not surrender an expectation of priva-

cy in that film as society understands it to be. Appellant analogizes such circumstances to sending something by mail or surrendering property for shipment. This argument is not tenable.

Once appellant dropped the film at K-Mart to be developed she lost any reasonable expectation of privacy pertaining thereto. It simply is not reasonable to believe that all of the processing of the film is done automatically and that the packages of film once unsealed will not ever be in human hands, at least for inspection. Indeed, it is the policy of Color Craft Corporation, which actually developed the film, to have every single picture entrusted to them inspected by hand. By relinquishing the film to K-Mart, the appellant assumed the risk that the film's contents would be shown to the authorities.

The initial frustration of appellant's expectation of privacy was occasioned by private action. Any additional invasion of appellant's privacy by the state "must be tested by the degree to which they exceeded the scope of the private search." *United States v. Jacobsen, supra,* 466 U.S. at 115, 104 S.Ct. at 1657. The subsequent seizure of the additional roll of film from K-Mart resulted in no prejudice to appellant as the seizure was irrelevant because those photos did not contain any incriminating photographs of A.G. Thus, since the appellant had no legitimate expectation of privacy in the photographs and since the initial seizure was done by Color Craft there was nothing to bar the state from using these photos at appellant's trial.

▪ Additionally, appellant contends that the seizure of the three packages of photographs from her van by Officer Schwandt did not fall into any of the recognized exceptions to the warrant requirement and was therefore invalid. If made pursuant to proper voluntary consent, a warrantless search or seizure is valid under the Fourth Amendment. *State v. Lingar,* 726 S.W.2d 728 (Mo. banc 1987); *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982), *cert. denied* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). The Fourth Amendment permits consensual searches which are conducted without a search warrant "so long as the consent to the search was voluntary and not the product of duress, coercion or fraud." *State v. Johns,* 679 S.W.2d 253, 261 (Mo. banc 1984). Whether a search was in fact voluntary is a question of fact which can only be answered by an examination of the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *State v. Blair, supra,* 638 S.W.2d at 750.

▪ In determining whether the consent to search was voluntarily given many factors are examined. One of these factors is a person's knowledge of their right to refuse consent although the state does not need to establish such knowledge as a prerequisite to establishing a voluntary consent. *C.E. v. S.E.,* 700 S.W.2d 145, 146 (Mo.App.1985). In examining the totality of circumstances in the instant case it is readily apparent that appellant's consent was voluntarily given.

Officer Schwandt's testimony gives the basic picture of what occurred after the van in which appellant had been a passenger was stopped. He testified:

As soon as I contacted the passenger, Ms. Urban and I, I asked her if she had just picked up some photos at K-Mart. She said that she had. The door was opened and I was talking with her. She was sitting in the passenger's side of the van. And then I was looking in. I could see that there was a bag between the driver's seat and the passenger's seat. I said, "Are these photos?" She said yes. I said, "Can I see them?" She hesitated momentarily and then picked up the bag and handed me the bag.

There is no evidence that appellant did not know she had the right to refuse consent. The officer did not deceive or trick appellant into handing over the pictures, nor were elements of duress or coercion present as appellant was not physically restrained or otherwise overtly threatened. Appellant was "completely cooperative" with the officer after the vehicle was stopped.

Since the photographs were legally seized, appellant's argument that they tainted her subsequent statement is without merit. The "fruit of the poisonous tree" doctrine is inapplicable. Appellant's Point VI is denied.

Appellant's Points VII, VIII, IX and X all pertain to the exclusion of various witnesses' testimony. Appellant alleges that the trial court erred in excluding the following testimony: (1) David Urban's testimony as to his purpose and intent in creating the photographs; (2) Dr. Wayne Anderson's expert testimony that the photographs were not pornographic; (3) T.G.'s testimony as to her opinion that the photographs did not depict any sexual activity; and (4) Dr. Joel Ray's deposition.

A trial court enjoys broad discretion in ruling on whether to exclude or admit evidence adduced by the parties at trial. *State v. Hoban*, 738 S.W.2d 536, 542 (Mo.App.1987). An appellate court will not interfere with a trial court's ruling on the admission or exclusion of evidence absent a clear abuse of that trial court's discretion. *Id.*

Appellant asserts that the trial court wrongfully excluded the testimony of David Urban under section 573.050, RSMo 1986, which provides:

**573.050. Evidence in pornography and child pornography cases.**—1. In any prosecution under this chapter evidence shall be admissible to show:

(1) What the predominant appeal of the material or performance would be for ordinary adults or minors;

(2) The literary, artistic, political or scientific value of the material or performance;

(3) The degree of public acceptance in this state and in the local community;

(4) The appeal to prurient interest in advertising or other promotion of the material or performance;

(5) The purpose of the author, creator, promoter, furnisher or publisher of the material or performance.

2. Testimony of the author, creator, promoter, furnisher, publisher, or expert testimony, relating to factors entering into the determination of the issues of pornography, shall be admissible.

Appellant asserts that David Urban, the creator of the photographs, should have been allowed to testify as to his purpose and intent in creating the photographs and that excluding such testimony was prejudicial to appellant.

The threshold difficulty with such an argument is the failure of appellant's trial counsel to make an offer of proof at trial. "When an objection to proffered evidence is sustained, the proponent of the evidence must make an offer of proof in order to preserve the matter for appellate review." *State v. Schneider*, 736 S.W.2d 392, 401 (Mo. banc 1987). Even if we assume *arguendo* that the court's ruling was in error, appellant does not demonstrate any prejudice beyond a bald assertion that she was prejudiced. Much of the evidence appellant complains was erroneously excluded was adduced at other points in David Urban's testimony. That he took the pictures because "I saw a beautiful—I thought, felt was a beautiful thing happening and did what's instinctive to me." He further testified that he had no commercial design for the photographs and did not take them for other people to view. Appellant's Point VII is denied.

Appellant next contends that the trial court erred in excluding the expert testimony of Dr. Wayne Anderson. As to this witness, trial counsel did make an offer of proof as to Dr. Anderson's testimony. Dr. Anderson would have testified that neither appellant nor the child depicted in the photos were aroused and that the behavior captured on the photographs is approved of and encouraged by some people. Dr. Anderson did testify that he did not see any indications of sexual arousal in any of the photographs.

Appellant again bases her argument on section 573.050.2, RSMo 1986, which provides for expert testimony "relating to factors entering into the determination of the issues of pornography." Appellant reads more into the statute than is actually

there. The statute speaks in terms of "factors entering into the determination" not the determination itself. Appellant's Point VIII is denied.

Similarly, appellant claims error in the exclusion of testimony by T.G. as to her opinion that the photographs did not depict any sexual activity, conduct or contact between appellant and the child. Again, no offer of proof was made as to this testimony thus foreclosing appellate review of the matter. *State v. Schneider, supra*, 736 S.W.2d at 401. Furthermore, the witness was asked, "What do those pictures depict to you?" T.G. answered, "They show my son and my mother playing...." Nor was the witness ever asked as to whether she thought the photographs depicted any sexual activity, conduct or contact. Appellant's Point IX is denied.

Appellant's final point contends that the trial court erred by excluding the deposition of Dr. Joel Ray. The defense subpoenaed Dr. Ray and he was properly served. At the time of the trial, Dr. Ray was out of state and defense counsel had released him from his subpoena. At trial, the court excluded the deposition of Dr. Ray.

■■■■ A proper review of this point cannot be made as no transcript of the deposition appears in the record on appeal. Appellant has the duty to file a complete transcript on appeal. *State v. Grainger*, 721 S.W.2d 237, 239 (Mo.App.1986). "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 30.04. There is simply no way to determine the relevancy of Dr. Ray's deposition. Appellant's Point X is denied.

The judgement of the trial court is affirmed.

All concur.