**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Gene THOMPSON, Defendant–Appellant.**

No. 59192.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 29, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Alan G. Kimbrell, St. Louis, defendant-appellant.

Susan Hewitt, Asst. Pros. Atty., St. Charles County, St. Charles, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

The defendant, Gene Thompson, was convicted in a bench trial in the Associate Circuit Court of St. Charles County of four counts of animal abuse and sentenced to six months' jail time, with execution suspended except for ten days. The defendant appeals and claims the court erred in that: (1) the information filed against the defendant is fatally defective; (2) the evidence obtained from the defendant's barn and the fruits of that evidence should have been suppressed because it was obtained through an illegal search and seizure; (3) the evidence obtained from the horses at the Millstadt Rendering Company was also the result of an illegal search and seizure and should have been suppressed; and, (4) the state failed to meet its burden of proof as to the ownership or custody of the live dog found on the defendant's premises. We affirm.

On March 21, 1989, a real estate agent showed the defendant's home to Charla Shurtleff and her family. The defendant's home was for sale and the agent had permission to show it to the Shurtleff family. The defendant also had a garage, which had a sign warning people to stay out, and a barn on his land.

The agent and the Shurtleffs did not go into the garage because of the sign but noticed a dog next to the barn which they felt looked quite weak. One door to the barn was locked but the other door was held closed by a small latch which they easily opened. They all entered the barn and once inside discovered two dead horses and a dead dog. Mrs. Shurtleff left the

premises and called the St. Charles County Health Department.

Two rabies officers from the Health Department responded to Mrs. Shurtleff's call and met her and the agent at the defendant's residence. Mrs. Shurtleff showed the rabies officers the dead animals and the wizened dog. The rabies officers called the St. Charles County Sheriff's Department for assistance. The Sheriff's Department conducted an investigation of the barn and area around it and photographed the scene.

The rabies officers removed the live dog and dead dog from the scene and returned with the Health Department veterinarian. The doctor conducted an investigation of the dead horses in the barn and then returned to the doctor's clinic where she examined the live dog. The next day, March 22, the doctor performed a necropsy on the dead dog. On March 23, the doctor performed necropsies on the two dead horses, which the defendant had arranged to be removed to a rendering plant in Millstadt, Illinois.

The state charged the defendant with four counts of animal abuse and four counts of animal neglect. The defendant moved to suppress the evidence obtained through the search of his barn and the evidence from the necropsies performed on the horses in Millstadt. The court overruled his motion to suppress and the defendant, after a bench trial, was convicted on four counts of animal abuse. The four counts of animal neglect were dismissed.

■ The defendant's first point on appeal alleges that the information was fatally defective and failed to charge any offense, in that each of the counts charged disjunctively that the defendant had ownership or custody as to each animal abused. Count I, on which the defendant was convicted, read in part "the defendant, having ownership or custody of a small horse, white and brown in color, willfully failed to provide adequate care for said horse by not providing said horse with adequate food and water." The other three counts of animal neglect were essentially the same but referred to the other animals.

Defendant cites *State v. Hook*, 433 S.W.2d 41 (Mo.App.1968), in support of his contention that disjunctive charges and submissions are improper. The *Hook* case, however, deals with disjunctive submission of acts, one or more of which may constitute the same crime. *Id.* at 43.

In *State v. Salem*, 780 S.W.2d 683, 684 (Mo.App.1989), the court held that an information was sufficient which charged the defendant with having shot the victim knowingly or with the purpose of causing serious physical injury to him. The court ruled that *Hook* did not apply because just one act was charged, that of shooting the victim, although the intent accompanying the act was submitted in the disjunctive. *Id.* In *State v. Virdure*, 371 S.W.2d 196, 199 (Mo.1963), the court upheld an information containing the words "possession or control" because the words have common elements and do not connote entirely separate and distinct acts as constituting an offense.

Here, just one act was charged, that of failing to provide adequate care for the animals, while the surrounding circumstance of ownership or custody was charged in the disjunctive. Since only one act was charged *Hook* is not applicable here. In addition, the words ownership or custody have common elements and do not give rise to separate and distinct acts as constituting an offense. This point is denied.

The defendant's second point on appeal alleges that the court erred in overruling the defendant's motion to suppress the fruits of the evidence obtained through the warrantless search and seizure of the defendant's premises. The state raises several points in support of the warrantless search and seizure, however, since we find the defendant had no expectation of privacy as to the property searched and seized we will not discuss those points.

■ The proponent of a motion to suppress evidence has the burden of establishing that his constitutional rights were violated by the challenged search and seizure. *State v. Burkhardt*, 795 S.W.2d 399, 405

(Mo. banc 1990). The burden, however, is on the state to justify a warrantless search and to demonstrate that it falls within an exception to the warrant requirement. *Id.* Before the defendant can complain of a violation of the fourth amendment he has to have a legitimate expectation of privacy in the place or thing being searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *State v. McCrary*, 621 S.W.2d 266, 272 (Mo. banc 1981). The court has created a two-part test to determine whether a criminal defendant has a legitimate expectation of privacy in the thing or place searched. The defendant must have both an actual subjective expectation of privacy in the place or thing searched and this expectation must be reasonable or legitimate. The reasonableness or legitimacy of the expectation is measured by concepts of real or personal property law or to understandings that are recognized and permitted by society. *State v. McCrary*, 621 S.W.2d at 272–73.

In *U.S. v. Harnage*, 662 F.Supp. 766 (D.Colo.1987) the defendant's house was for sale and a detective obtained evidence through a warrantless search with a real estate agent. The court held that the defendant had no legitimate expectation of privacy given the fact that he held his house open to the public by putting it up for sale. *Id.* at 775. In *State v. Urban*, 798 S.W.2d 507 (Mo.App.1990) the defendant dropped off film at K–Mart to be developed. The court ruled that once the defendant dropped off the film she lost any reasonable expectation of privacy to it. By relinquishing the film to K–Mart, the defendant assumed the risk that the film's contents would be shown to the authorities. *Id.* at 515.

■ In reviewing the trial court's denial of the motion to suppress, we look only to determine whether the evidence was sufficient to support the ruling. *State v. Burkhardt*, 795 S.W.2d at 404. Here, the defendant opened his home, and the surrounding area, to the public by putting it up for sale. There was a sign on the garage indicating the defendant's desire to keep people out, but there was no evidence

of such a sign on the barn. The real estate agent, who had obtained a key to defendant's house from his real estate agent, and the Shurtleff family had permission to be on the property. Thus, there is no evidence to support a finding that the defendant had an actual subjective expectation of privacy.

Even if the defendant had an actual subjective expectation of privacy in his barn, this expectation would not be reasonable or legitimate. When the defendant opened his land up to the public he lost any reasonable expectation of privacy. He assumed the risk that anything unlawful which was found on his property would be reported to the authorities. Therefore, because the defendant had no reasonable expectation of privacy in the property searched and seized, he cannot be heard to complain of an illegal search and seizure. Point denied.

The defendant's third point on appeal alleges the court erred in overruling his motion to suppress the report of the necropsies of the horses and the testimony in regard to them because this evidence was the product of an illegal search and seizure. The state argues that the defendant lost any reasonable expectation of privacy in the horses because he abandoned them when the rendering plant in Millstadt, Illinois picked up the horses.

■ Once a party abandons property he no longer has a reasonable expectation of privacy with regard to it at the time of a search or seizure. *State v. Lingar*, 726 S.W.2d 728, 736 (Mo. banc 1987); *Settle v. State*, 679 S.W.2d 310, 320 (Mo.App.1984). The defendant relies on *Settle* to argue that the horses were not voluntarily abandoned. In *Settle*, a police officer unlawfully detained the defendant while his identification was being checked. During the detention the defendant threw an object into a grassy area. The court ruled the defendant's action did not constitute a voluntary abandonment. The court stated that the police cannot use coercion to force an individual to abandon his right to privacy and then use the evidence against him. Property which is thrown away due to the unlawful activities of police officers is not to be

considered abandoned. *Settle v. State,* 679 S.W.2d at 321.

 In reviewing the trial court's denial of the motion to suppress, we look only to determine whether the evidence was sufficient to support the ruling. *State v. Burkhardt,* 795 S.W.2d at 405. The defendant argues that a deputy of the St. Charles Sheriff's Department threatened the defendant with further prosecution if he failed to have the horses removed within 24 hours. The defendant testified, however, that he had spoken with the rendering plant about picking up the horses before the deputy spoke with him. The defendant's argument fails, therefore, on two grounds. First, the deputy's conduct did not amount to coercion and, second, even if the deputy's conduct was coercive it was not the cause of the defendant sending the horses to the rendering plant. Thus, the defendant abandoned the horses and had no reasonable expectation of privacy. This point is denied.

The defendant's fourth point alleges that the state did not meet its burden of proof as to the ownership or custody of the live dog removed from the defendant's premises. The defendant argues that the state's evidence was, at best, circumstantial as to the ownership of the dog.

 In determining the sufficiency of evidence to support a conviction, all evidence tending to support the verdict must be considered as true, contrary evidence disregarded, and every reasonable inference supporting the verdict indulged. *State v. Wahby,* 775 S.W.2d 147, 154 (Mo. banc 1989). The defendant's argument that only circumstantial evidence supported the finding that he owned the live dog is irrelevant in that the state only needed to prove ownership or custody. There was direct evidence to support a finding that the defendant had custody of the dog, including the defendant's own testimony that he had locked the dog in the kennel to keep it away from the dead horses. This evidence is sufficient to support a finding that the defendant had custody of the live dog and we do not need to go into the circum-

stantial evidence as to ownership. This point is denied.

Judgment affirmed.

CRIST and AHRENS, JJ., concur.