**STATE of Missouri, Respondent,**

v.

**Beatrice WILSON, Appellant.**

No. 64536.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 13, 1994.

Matthew J. O'Connor, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

A jury found defendant guilty of one count of burglary in the first degree, § 569.160, R.S.Mo.1986 (all further statutory references shall be to R.S.Mo.1986 unless otherwise indicated), and one count of making a false declaration, a misdemeanor under § 575.060. The court sentenced defendant as a Class X prior and persistent offender to fifteen years on the burglary count and six months on the false declaration count, to be served concurrently.

On appeal, defendant contends that the trial court erred in (1) overruling her objections and request for a mistrial because the state impermissibly injected details of her prior convictions during its cross-examination

of defendant, thereby causing substantial prejudice and infringement of her rights to due process and a fair trial; (2) failing to declare a mistrial *sua sponte* where the state argued that (a) it would not have charged defendant if it did not believe she were guilty, (b) defendant did not plead guilty because she did not receive a favorable plea offer, and (c) details of defendant's prior convictions suggested guilt in the current trial; (3) overruling defendant's challenges for cause to particular venirepersons who had been victims of burglaries, thereby denying defendant's rights to due process and a fair trial; and (4) failing to quash the venire panel *sua sponte* where more than half of the venirepersons were themselves victims of burglaries or other property crimes or were related to such victims. Defendant further raises in her fourth point a challenge to the constitutionality of § 494.480, R.S.Mo.Cum. Supp.1993 (all further references to this section shall be to R.S.Mo.Cum.Supp.1993), which prohibits challenges to the qualifications of venirepersons who did not serve on the jury or participate in the verdict, on the ground that it constitutes an unconstitutional exercise of judicial power by the legislature. We affirm.

We view the evidence in the light most favorable to the verdict. In the early morning hours of September 5, 1992, Anthony Akridge and his family were sleeping at their home in the City of St. Louis. Mr. Akridge was awakened around 3:45 a.m. by a noise in the kitchen. Thinking that his children were up getting a drink, he got up and looked from the foot of his bed into the kitchen, but he saw nothing. He then went back to sleep.

Mr. Akridge got up around 7:00 that morning. As he went to get his clothes from the dresser, he noticed that his wallet, which he had placed on the dresser the night before, was missing. The wallet had contained approximately $200.00 in cash, along with some credit cards. After dressing, Mr. Akridge noticed his wallet on the kitchen table, but a pellet pistol he had left there was gone. The only item missing from the wallet was the $200.00 cash. Mr. Akridge suspected that someone had been in the house around 3:45,

because his wife "wouldn't have touched" the wallet.

Hearing a noise in the basement, Mr. Akridge went downstairs to investigate. He discovered a bent window screen, items thrown about and a basket of dirty laundry kicked over, and he saw that some clothes hanging on a line were moving. He picked up a pellet rifle from the basement steps and said, "Come on out or I'm going to shoot you," whereupon defendant stepped out from behind the hanging clothes. Defendant was not wearing shoes. Mr. Akridge asked defendant, "How long you been in my damn house breaking in here?" She replied, "I just came in." Mr. Akridge told her that someone had been in his house since 3:45, but defendant denied that she had been there that long. She tried to climb out the basement window, but Mr. Akridge and his son, Mark, detained her. While Mark held defendant, Mr. Akridge called 911. He was instructed to continue to detain defendant until the police arrived.

Mr. Akridge and Mark took defendant upstairs. She tried several times to break free, once reaching the locked back door, but she was unable to escape. At one point, defendant said she had to go to the bathroom, but she changed her mind when she was led to a windowless bathroom.

When the police arrived, their investigation revealed that, in addition to the $200.00 from Mr. Akridge's wallet, $20.00 cash was missing from Mark's wallet. None of the cash was found, nor was the pellet pistol. However, the police did find a hair ribbon in the basement and a pair of shoes on the neighbor's porch. Defendant identified the shoes as hers and put them on before the police took her into custody. Investigators also discovered a palm print on the washing machine in the Akridge basement. The print was identified at trial as defendant's.

Defendant was arrested and read her *Miranda* rights. She was taken to the police station for booking, where she affixed her fingerprints to the arrest document and signed it using the name "Lisa Thompson." A computer analysis of the fingerprints showed that they belonged to defendant Beatrice Wilson and, therefore, the name "Lisa

Thompson" was an alias. Defendant testified that she used the alias because she did not want the police to know she was on parole.

The venire panel consisted of forty-one persons, twenty-four of whom reported having been either victims of burglaries themselves or related to burglary victims. Twelve jurors and two alternates were seated, six of whom had been among the group of twenty-four venirepersons with burglary experiences. Defendant sought by a general motion to have the six excluded for cause, but the court overruled the motion.

The jury found defendant guilty on both counts. At sentencing, the trial court also heard and denied defendant's motion for new trial.

In her first point, defendant argues that the trial court erroneously permitted the prosecutor to draw out details of her prior convictions in order to suggest that she was guilty on the present charges. Defendant testified on direct examination as follows:

[DEFENSE COUNSEL:] Isn't it true you have been convicted before?

[DEFENDANT:] Yes, it is.

Q. How many times you have been convicted of a crime?

A. Once.

Q. And what did you get on that?

A. Three years in the penitentiary.

Q. And was that the first time you went to the penitentiary?

A. Yes, it was.

Q. And was that the last time you went to penitentiary?

A. Yes.

Q. And for what?

A. Forgery and burglary.

Q. Okay. How many—how many crimes you have been convicted of?

A. I don't know actually how many cases. It was—all I know is that the lawyer at that time had gave me three years for four of them.

Q. The judge gave you three years?

A. Yes.

Q. Three years total for everything?

A. Yes.

Q. Whatever it was?

A. Yes. Yes.

Q. And you don't know the details?

A. No, I don't.

The following exchanges, about which defendant particularly complains, occurred on cross-examination:

[PROSECUTOR:] You know, I'm not going to go into much detail. I just want to know if you remember being arrested for trespassing and then having been convicted of trespassing at 3645 or somewhere in the thirty-six hundred block of Illinois back in around September of 1987, do you remember that?

A. Yeah.

Q. All right. And in that particular instance do you recall that when this person, Mr. Tinker, found you, you were barefoot?

[DEFENSE COUNSEL]: Objection, Your Honor, he's going into unnecessary details of a prior.

[PROSECUTOR]: Can we approach the sidebar?

THE COURT: Overruled. You may proceed, sir.

[PROSECUTOR:] Isn't it true that when Mr. Tinker found you in his house that day you were barefoot and your moccasins, they were down the hall; isn't that true? On that particular incident when Mr. Tinker found you, you don't remember the fact that you were barefoot?

A. No.

Q. Do you deny that you were barefoot?

[DEFENSE COUNSEL]: Judge, I'm objecting again.

THE COURT: All right. Sustained.

[DEFENSE COUNSEL]: May the jury be instructed to disregard the question?

THE COURT: All right. The last question the jury is instructed to disregard.

■ The extent of cross-examination rests largely in the discretion of the trial court, and we will not interfere unless that discretion is abused. *State v. Dunn*, 577 S.W.2d 649, 653[3] (Mo. banc 1979). While

we do not condone the prosecutor's attempt to draw out the fact that defendant was barefoot in a prior burglary, we find no abuse of discretion here. *See State v. Alexander,* 706 S.W.2d 21, 24[4] (Mo. banc 1986). When a defendant unequivocally, clearly, and concisely testifies to all of her prior convictions, including the nature of the offenses, dates, places and resulting sentences, further examination by the state generally is foreclosed. *State v. Bradshaw,* 877 S.W.2d 714, 716[6] (Mo.App.E.D.1994). That is not the case here. Defendant testified on direct examination that, although she remembered having been convicted before, she could not recall any details of her prior convictions, including dates and places. Thus, by making ambiguous statements, *State v. Simmons,* 825 S.W.2d 361, 364[7] (Mo.App.1992), she opened the door to further inquiry by the state. *Bradshaw,* 877 S.W.2d at 716–17[8].

Defendant's reliance on *State v. Green,* 707 S.W.2d 481 (Mo.App.1986), is inapposite. In *Green,* the Western District reversed the trial court's judgment where the prosecutor went beyond "the nature and number" of the defendant's prior convictions. *Id.* at 483[2] (quoting *State v. Newman,* 568 S.W.2d 276, 281–82 (Mo.App.1978)). However, defendant's testimony here was far less definite than that of the defendant in *Green,* who admitted on direct examination all of her prior convictions and testified as to the dates, places and resulting sentences thereof. *Id.* at 482–83. Here, the prosecutor's questions and references regarding the dates and places of the events leading to some of defendant's prior convictions were not improper under the circumstances. *See, e.g., State v. Sanders,* 634 S.W.2d 525, 527[1] (Mo.App. 1982).

The prosecutor asked three separate questions concerning defendant being barefoot at the Tinker house. First, the prosecutor asked, "[D]o you recall that when this person, Mr. Tinker, found you, you were barefoot?" Defense counsel timely objected before defendant could answer, and the trial court overruled the objection. Second, the prosecutor restated the question: "Isn't it true that when Mr. Tinker found you in his house that day you were barefoot and your moccasins, they were down the hall; isn't that true? On that particular incident when Mr. Tinker found you, you don't remember the fact that you were barefoot?" Defense counsel did not object to this question, and the defendant answered, "No." Defense counsel timely objected to the prosecutor's third question, "Do you deny that you were barefoot?" The trial court sustained this objection and, upon defense counsel's request, instructed the jury to disregard the question.

■ We will analyze each question for error individually. There was no prejudice in the trial court's overruling of the objection to the first question where it was never answered, particularly in light of the court's submission of MAI–CR3d 302.02, which states in part, "A question is not evidence, and may be considered only as it supplies meaning to the answer." As to the second question, (1) defendant did not object to it, thereby preserving nothing for review, *State v. Urban,* 798 S.W.2d 507, 514[14] (Mo.App. 1990); (2) there was no prejudice to defendant since she answered, "No;" and (3) there was no manifest injustice that would justify reversal under the plain error standard. *See id.* at 514[12–13]. Finally, by sustaining defendant's objection to the third question and instructing the jury to disregard it, the trial court granted the relief which the defendant requested. Defendant's first point is denied.

■ For her second point, defendant argues that the trial court erred in not declaring a mistrial *sua sponte* because of the prosecutor's allegedly improper closing argument. Defendant recognizes that, although her counsel objected at trial to part of the argument and she raised the issue in her motion for new trial, she did not object to the remainder of the argument nor did she seek a mistrial. Her motion for new trial contained only a general objection to "the irrelevant, inflammable, and highly prejudicial remarks made by State during State's closing arguments." To preserve a claim of error, an objection must be sufficiently specific to apprise the trial court of the grounds for the objection. *State v. Stepter,* 794 S.W.2d 649, 655[11] (Mo. banc 1990). Defendant's general objection does not satisfy this standard.

Therefore, she did not preserve the error for review, but we will review for plain error. *State v. Taylor*, 664 S.W.2d 269, 272–73[6] (Mo.App.1984).

■ To demonstrate plain error, defendant must show that manifest injustice or a miscarriage of justice will occur if we do not correct the alleged error. Rule 30.20; *State v. Sandy*, 882 S.W.2d 232, 235[8] (Mo.App. E.D.1994).

Defendant directs our attention specifically to three portions of the prosecutor's closing argument. She maintains that, in the first passage, the prosecutor states, in essence, "I wouldn't have brought the charge if she weren't guilty." The complained-of passage ("first statement") is as follows:

> [PROSECUTOR:] ... [T]here should be no question in your mind that you don't just simply wander through somebody's window for no good, gosh darn reason.
>
> Can you imagine the shock in your face if you would come down to the Circuit Attorney's Office in a similar circumstance and explain to me how somebody—
>
> [DEFENSE COUNSEL]: Judge, irrelevant, prejudicial.
>
> THE COURT: Sustained.
>
> [PROSECUTOR]: Well, can you imagine if what—just consider the idea of what Mr. Akridge, if he had been told by the Circuit Attorney's Office, you know, I'm sorry, I know the lady was found in your house and I know she was barefoot and I know her shoes were on the back porch and I know you're missing alot [sic] of money, and, you know, I know that she has a lengthy burglary record, you know, Mr. Akridge, but she might come in and say, she might, Mr. Akridge, she might come in and tell the jury that she was just selling drugs and you dragged her into that house.
>
> And Mr. Akridge saying, well, you know, that would be pretty hard to believe, who would believe that person who has all those convictions, that's not a very believable thing, and the prosecutor saying, I'm just sorry, Mr. Akridge, that's something that might happen so we just can't prosecute that case. I'm really sorry. That would

be a pretty pathetic stand for the Circuit Attorney's Office to have to be in if we would say things like that to victims who would come into our offices.

■ In closing argument, a prosecutor may draw legitimate inferences from the evidence, so long as they do not imply the possession of secret knowledge. *State v. Debler*, 856 S.W.2d 641, 651[22] (Mo. banc 1993). Quoting our decision in *State v. Evans*, 820 S.W.2d 545, 547[2] (Mo.App.1991), defendant contends that the prosecutor's first statement "implies knowledge on his part of facts not in evidence pointing to defendant's guilt." In *Evans,* the prosecutor explicitly said, "If [the defendant] were innocent I wouldn't bring a charge." *Id.* at 547. We do not equate the prosecutor's first statement here to that of the *Evans* prosecutor, and it does not rise to the level of manifest injustice.

The second portion of closing argument about which defendant complains concerns her failure to plead guilty. The prosecutor made the following statement ("second statement") during the rebuttal segment of his argument:

> [PROSECUTOR]: This woman has been convicted of that crime before and she is certainly aware of the significance of that crime and what she's looking at by admitting that crime versus a burglary in the first degree, which is what this lady committed which is a much more significant crime, and the defense attorney is telling you the reason she's not pleading guilty here like she's done in the past is because here she's not guilty and there she was, therefore, she must be a more honest person.
>
> And, ladies and gentlemen, I'll tell you right now that the reason she's not pleading guilty is because she's not getting the deal that she would like to have.

In answering defendant's claims that the second statement was prejudicial and that the trial court should have declared a mistrial, the state draws our attention to defense counsel's remarks during his closing argument, to which the second statement was directed:

[DEFENSE COUNSEL:] Now, if she's a big liar the way prosecutor wants you to believe, every time she got involved into something she plead guilty. Now, you give me a reason why she's not pleading guilty?

[PROSECUTOR]: Judge, I object. That's improper argument and I ask permission to retaliate.

THE COURT: Sustained.

■ Defense counsel clearly was attempting to create the inference that defendant pleaded not guilty on this occasion because she was in fact not guilty, and that she pleaded guilty to prior charges solely because she was guilty. Therefore, the prosecutor was free to rebut that inference. *See Simmons,* 825 S.W.2d at 364[8].

Finally, defendant contends that the prosecutor, in his closing argument, impermissibly injected details of her prior convictions in an attempt to suggest that they made her more likely to be guilty of the present charges. The specific exchange ("third statement") was as follows:

[PROSECUTOR:] A matter that—consider jurors sitting on a trial like this, afterwards going home and someone saying "[W]hat kind of a trial do you have?", and the jurors saying, well, this is a case where a lady is caught inside a man's house and, yeah, she was barefoot and her shoes were out on the back porch and alot [sic] of money was missing from the house and, oh, yeah, she also had four convictions for burglary and several for trespassing, even one where she had her shoes off.

[DEFENSE COUNSEL]: Objection, he's making improper argument.

THE COURT: Sustained. Jury instructed to disregard the last comment.

■ Defendant sought no further relief, and the claim of error is not preserved for review. *See State v. Hendrix,* 883 S.W.2d 935, 945[18] (Mo.App.W.D.1994). Reviewing for plain error, the third statement, like the other two, does not rise to the level of manifest injustice. Point denied.

Defendant's third point alleges that the trial court erred in overruling her challenges for cause to six venirepersons (Burroughs, Claywell, Dickerson, Kunz, Lee and Monroe) who had been victims or were related to victims of burglary, and that the court's action deprived her of her constitutional rights to due process and a fair trial. We may divide the six into three pairs for purposes of identification: (1) those who served on the jury and to whom defendant specifically objected at trial (Burroughs and Claywell); (2) those who served on the jury but to whom defendant never objected specifically (Kunz and Lee); and (3) those who did not serve on the jury to whom defendant also failed to object specifically (Dickerson and Monroe).

At trial, defense counsel made a general motion "to remove all the jurors from the panel who has [sic] been personally victims of the [sic] burglary." The trial court overruled the motion, stating that any motion to strike "would have to be specific as to any particular juror and their response related to questions as to their being a victim of a similar crime[.]" Defense counsel then made specific motions to strike Burroughs and Claywell, but the trial court overruled the specific motions on the ground that they said nothing to indicate that their experiences as burglary victims would cause them to be unfair. Defendant did not challenge venirepersons Dickerson, Kunz, Lee and Monroe at trial, and she renewed only her general motion to strike in her motion for new trial.

■ The failure to make a timely and proper objection to members of a jury panel constitutes a waiver. *State v. Sumowski,* 794 S.W.2d 643, 647[13] (Mo. banc 1990). Therefore, the challenges to venirepersons Dickerson, Kunz, Lee and Monroe are waived. The renewal of the general objection in defendant's motion for new trial does not preserve the issue, for the same reason that her objections to the prosecutor's closing argument are not preserved, namely, the absence of a specific objection. *See Stepter, supra.* The trial court properly overruled defendant's general objection as to Dickerson, Kunz, Lee and Monroe, and defense counsel failed to make the objection specific even after the court explained that a specific objection was necessary. The claimed error was not preserved, but we review for plain error.

Determination of a potential juror's qualifications remains within the broad discretion of the trial court after consideration of relevant voir dire in its entirety. *State v. Wheat,* 775 S.W.2d 155, 158[3] (Mo. banc 1989), *cert. denied sub nom. Wheat v. Missouri,* 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). We will not disturb that determination unless there is a clear abuse of discretion and a real probability of injury to the complaining party. *Ray v. Gream,* 860 S.W.2d 325, 331[1] (Mo. banc 1993). The critical question in our review is whether the challenged venirepersons unequivocally indicated their ability to evaluate the evidence in a fair and impartial manner. *Id.* at 331–32[3].

Here, each of the four venirepersons in question stated unequivocally that they could set aside their personal experiences with burglaries and be fair jurors. We find no clear abuse of discretion, nor do we find manifest injustice amounting to plain error.

We may apply the same reasoning to defendant's challenges of venirepersons Burroughs and Claywell. Although, unlike the other four, defendant challenged them at trial, she did not renew her specific challenge in her motion for new trial. Therefore, the challenges to Burroughs and Claywell, like the others, are subject to plain error review only. *See Stepter, supra.*

We find no manifest injustice in the presence of Burroughs and Claywell on the jury. Moreover, like the other four, Burroughs and Claywell unequivocally stated that they could review the evidence fairly and impartially, and the trial court did not abuse its discretion nor create a real probability of injury to defendant in permitting them to serve on the jury. *Wheat, supra; Ray, supra.* Point denied.

In her fourth point, defendant asserts plain error in the trial court's failure to quash the venire panel *sua sponte* because "twenty-four of the forty-one venirepersons were either burglary victims, related to burglary victims, or victims of property crimes." Defendant made no motion to quash the panel at trial; she challenges it for the first time on appeal.

Our Supreme Court addressed the procedure for jury selection in *State v. Bynum,* 680 S.W.2d 156 (Mo. banc 1984). Its observations are relevant here:

> There is a strong presumption that the jury tendered at the outset of trial has been properly selected. One who would challenge the jury panel must do so before trial, by pleading and proving fatal departures from the basic procedural requirements. A defendant cannot stand trial, hoping for acquittal, and then challenge the selection of the jury which convicts. Even so, there is a degree of tolerance, and a panel will be held to be improperly constituted only for substantial reasons.

*Id.* at 160[6–9].

Defendant here seems to be engaging in precisely the behavior the *Bynum* Court condemned. She cannot challenge the venire panel for the first time here. There are no "substantial reasons" to find that the panel was "improperly constituted," and there is no manifest injustice with regard to the burglary victims on the panel, whether or not they served on the jury.

Defendant also raises a constitutional challenge to § 494.480.4. We decline her invitation to review. Defendant was tried and convicted in June of 1993, but § 494.480.4 did not become effective until August 28, 1993. Therefore, she was not affected by the statute or its application, and her challenge thereto is misplaced. Point denied.

Judgment affirmed.

AHRENS, P.J., and KAROHL, J., concur.