**STATE of Missouri, Respondent,**

v.

**David EVANS, Appellant.**

**David EVANS, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58275, 59779.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 22, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 4, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Phil Horwitz, Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert Allen Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals jury convictions for burglary in the second degree, stealing in the amount of $150 or more, and resisting arrest. He was sentenced as a prior and persistent offender to terms of twelve years for each felony offense and six months for the misdemeanor of resisting arrest, all to be served concurrently. Defendant also appealed the denial of his Rule 29.15 motion, although he did not file a brief relating specifically to this point. We reverse and remand for a new trial because of prosecutorial misconduct in closing argument.

Defendant initially questions the sufficiency of the evidence. Viewing the evidence in the light most favorable to the verdict, we find the State made a submissible case.

At approximately eleven o'clock on the night of November 11, 1987, Ms. Donna Schmisseur heard the sound of breaking glass from the street below as she entered her second-floor apartment. She turned off her apartment lights and went to the window. From that vantage point, she saw two people at the entrance to Casey's Sporting Goods Store. Ms. Schmisseur saw that one person was inside the store carrying merchandise to another person standing outside the store. She could not identify the people. Ms. Schmisseur phoned the police and reported the burglary. While she was on the phone, she heard a car take off; she told the police it went north.

Clayton Patrolman Tom Stockmann, responding to the reported burglary, went to the sporting goods store. On his arrival, he saw that the rear doors had been broken into, and that numerous items of clothing were lying around the area. Stockmann left the scene, traveling in a northward direction. Within four minutes of receiving the first report of the burglary, Stockmann saw a brown Dodge station wagon with a large pile of multicolored clothing in the back seat. Stockmann activated his lights in an attempt to pull the car over. The station wagon initially slowed and pulled to the curb, but then accelerated and began what became a "high-speed chase" through the streets of Clayton. Two other patrol cars joined the chase, all with their lights on and at least one with its siren on. The

station wagon eventually attempted a sharp turn and slid sideways into the curb, coming to an abrupt halt.

When the car stopped, the driver's door opened and a man subsequently identified as Dennis Purdy got out from behind the wheel. As he was approached by two patrolmen, two other men, one of them Defendant, got out of the passenger-side door and ran from the scene. Defendant was quickly apprehended as he tried to climb a fence in an attempt to escape.

Defendant was taken to a hospital for an examination of injuries of which he complained. The police then took him to the Clayton Police Department. Defendant was read his *Miranda* rights, and he signed a written waiver. Defendant then confessed he had come to Clayton with the other two suspects with the original intent of burglarizing a residence rather than a sporting goods store. He stated he had remained outside the store while the other two went inside.

At trial, a police detective described the scene where the car had come to rest: "... the interior of the station wagon was filled with a lot of what appeared to be jogging suits, sweat shirts ..." Another officer stated, "[there were t]ons of clothes ... The whole car was full of them." A functioning set of walkie-talkies was also seized from the car, along with a single glove matching the one worn by the driver, and many bricks identical to those found in the parking around the smashed rear entrance of the sporting goods store.

In accordance with regular police procedures, the entire load of clothing was returned to the store manager, who had been called to the store after the burglary. The manager identified where the clothing had been hanging on the now-empty racks, and he estimated that around one hundred separate items had been returned by the police. He testified at trial that, as the manager in charge of pricing, he knew that the prices for the two types of sportswear that had been stolen and returned were $12.99 and $16.99 per item.

Defendant's evidence at trial consisted entirely of his own testimony. He claimed he hitched a ride from Dennis Purdy after the burglary took place. He admitted he jumped out of the station wagon and ran from the police after the car came to a stop. He denied that he had made a confession.

The evidence was sufficient to submit the case to the jury. There was testimony that Defendant had confessed to knowledge of and involvement in the events which occurred at the scene of the crime. Defendant was apprehended within minutes after the burglary, he was seen in joint possession of the stolen items, and he fled from the getaway car after it had come to a halt.

Defendant next complains about the State's closing argument. In Defendant's closing argument, his counsel stated that the State had a vested interest in Defendant's conviction. In response, the prosecutor stated in closing:

> ... [defense counsel] says the State has a vested interest in this man's conviction.... Now I'm being attacked. The police officer is being attacked.... If this man were innocent I wouldn't bring a charge.
>
> MS. BROWN [defense counsel]: Objection.
>
> MR. SIEGEL [prosecutor]: I wouldn't try this case.
>
> MS. BROWN: Objection, Your Honor. May we approach the bench, please.

Out of the hearing of the jury, Defendant's counsel asked for a mistrial. The trial court sustained the objection and asked the jury to disregard the comment of the prosecutor but denied the motion for a mistrial.

There are limits as to how far the prosecutor can go in retaliation. It is improper for the prosecutor to express his belief of a defendant's guilt to the jury in such a way that it implies knowledge on his part of facts not in evidence pointing to the Defendant's guilt. *State v. Moore*, 428 S.W.2d 563, 565[4] (Mo.1968). The problem with such an argument is that it does not seek a verdict based on proof of guilt of the accused, but instead rests as an expression of confidence in a prosecutorial system

which does not bring innocent persons to trial. *State v. Bramlett*, 647 S.W.2d 820, 822[1] (Mo.App.1983). "This appeal to the jury is a pernicious attack upon fundamental concepts of the criminal justice system and exceeds the bounds of legitimate comment on the evidence." *Id.*

The prosecutor's deliberate and prejudicial statement that if Defendant were innocent he would not bring a charge and would not try the case could not be cured by the trial court's admonition to the jury to disregard it.

> In the trial of a criminal case, the [prosecutor] occupies a quasi-judicial position. While it is his duty vigorously and fearlessly to prosecute in behalf of the state, yet he is also chargeable with the duty to see that the defendant gets a fair trial and he must not knowingly prejudice the right of the defendant to a fair trial by injecting into the case prejudicial and incompetent matters.

*State v. Beck*, 745 S.W.2d 205, 209[4, 5] (Mo.App.1987) *citing State v. Allen*, 363 Mo. 467, 251 S.W.2d 659, 662 (1952). The prosecutor's statement in the instant case strongly implied to the jury that the prosecutor knew Defendant was guilty. The chance that some of the jurors may have relied on the prosecutor's statement in his "quasi-judicial position" renders the trial judge's attempts at a cure inadequate and necessitates a new trial.

We do not deem it necessary to consider other points relied upon by Defendant.

Reversed and remanded for a new trial.

PUDLOWSKI, P.J., and STEPHAN, J., concur.