**STATE of Missouri, Respondent,**

v.

**Ivory JONES, Appellant.**

**Ivory JONES, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 58181.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 26, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Susan L. Hogan, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

In this jury-tried case, defendant, Ivory Jones, appeals his convictions of two counts of rape, and one count of sodomy. Defendant also appeals from the denial, without an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief. Defendant was sentenced as a persistent sexual offender to three concurrent thirty-year terms of imprisonment without parole. We affirm.

Defendant does not challenge the sufficiency of the evidence. A.B.[1], defendant's sixteen-year-old step-daughter, testified that on five or six occasions between January and February, 1988, defendant forced her to engage in sexual intercourse with him. During that time, defendant also forced A.B. to engage in acts of sodomy. A.B. stated some of the acts occurred after defendant forced her to remain home from church, while they were alone in the house. The acts were accompanied by threats that defendant would kill A.B.'s mother.

---

1. The initials used are not the true initials of the individuals who testified.

In his first point, defendant contends the trial court erred in overruling his pretrial motions and trial objections to exclude the testimony of A.B.'s sister, E.F., that defendant "had sexually abused her several years prior to the conduct charged in this case. . . ."

E.F. testified that during a period of four to five years beginning in 1981, defendant at times forced her to engage in sexual intercourse and acts of sodomy with him when she and defendant were alone in the house after defendant forced her to remain home from school. During that time, defendant threatened E.F. that he would kill her mother.

Defendant asserts the testimony was "improper evidence of other uncharged crimes." "While 'evidence of similar sex crimes against other persons is inadmissible for purposes of showing propensity,' such evidence 'is admissible if it tends to establish motive, intent, identity, absence of mistake or accident, or a common scheme or plan.'" *State v. Christeson,* 780 S.W.2d 119, 122 (Mo.App.1989) (quoting *State v. Kerr,* 767 S.W.2d 344, 345 (Mo. App.1989)). The sexual acts about which E.F. testified were similar to the sexual acts for which defendant was on trial. A.B. testified the sexual acts had taken place three or four times while she and defendant were alone in the house; similarly, defendant forced E.F. to engage in sexual acts when he was alone with her in the house. Further, there was consistent testimony that defendant's acts of sexual intercourse and sodomy with A.B. and E.F. were accompanied by threats he would kill his step-daughters' mother. These circumstances demonstrated defendant's common scheme or plan to sexually abuse his step-daughters. *See State v. Koster,* 684 S.W.2d 488, 490 (Mo.App.1984); *State v. Askew,* 822 S.W.2d 497, 500 (Mo.App.1991).

Defendant argues the evidence "was too remote in time from the acts charged to have any probative value and the evidence therefore lacked relevance," because the "alleged acts involving [E.F.] started seven years prior to the onset of the alleged acts against [A.B.], and ended at least two years before the alleged acts against [A.B.]." Defendant contends that unlike the evidence of other acts in *State v. Muthofer,* 731 S.W.2d 504, 508–09 (Mo.App. 1987), the evidence in this case "demonstrates neither a 'persistent effort' nor a 'systematic and regular' course of conduct." We need not determine whether the evidence demonstrates such an effort or course of conduct. As stated in *Muthofer,* "[s]uch matters as remoteness of time go to the weight to be given to the testimony and not its admissibility." *Id.* at 509; *see also, State v. Simerly,* 463 S.W.2d 846, 848 (Mo.1971).

Defendant also argues that the passage of time between the acts involving E.F. and the acts involving A.B. defeats application of the "depraved sexual instinct" exception to the rule excluding evidence of other crimes. That exception was recognized in *State v. Lachterman,* 812 S.W.2d 759, 768–69 (Mo.App.1991) which was decided after the present case was tried. We need not decide whether that exception may be applied retroactively, because the testimony of A.B. and E.F. was properly admitted under the "common scheme or plan exception" applied in *Christeson* and recognized by this court at the time of defendant's trial. The trial court did not err in admitting the challenged testimony. Point one is denied.

Defendant's second point alleges the trial court plainly erred in overruling defendant's objection to a portion of the state's closing argument and in denying defendant's subsequent request for a mistrial.

During closing argument, defense counsel stated:

We talked earlier during voir dire about the lawyers and their role here and how this is not about lawyers, and it's not. This is about Ivory Jones.

[The prosecuting attorney] wants to win this case. That's his job. I want to win this case. That's my job. And I've got Ivory's life literally in my hands.

But if you all do your job and follow the instructions as you've sworn you would, if you hold the State to its burden

of proof beyond a reasonable doubt as to each and every element of the offenses charged, if you keep your promise to yourself, to the lawyers, to this community, that you would follow the law and hold the State to its burden, [the prosecuting attorney] nor I win individually.

We all win. The community wins. The law will be upheld.

The following occurred during the state's rebuttal argument:

[Prosecutor]: It's just not fair to the people if you decide the case based on something other than the evidence. And that's what I told you in voir dire. The only thing I'm going to ask you is to decide the case based on the evidence.

Now he tells you it's my job to win cases. Thank God, that's not my job. Because in the United States of America it would be a horrible system if the prosecutor's job was to win cases.

In fact, he probably knows that my job—and I'm sworn. I have taken an oath—my job is to obtain justice. If I believed somebody is not guilty I'm under a sworn obligation not to—

[Defense counsel]: I'll object to the personalization as to the prosecutor's belief. We're all sworn as attorneys in this case.

[Prosecutor]: He opened the door.

THE COURT: Overruled.

[Prosecutor]: Let me reiterate that because that's a very important point.

If I feel that anybody—you wouldn't have it any other way. Could you imagine a prosecutor's office any other way?

If I feel there is any doubt that this man is not guilty I will not prosecute this case. I've got too many cases. There is no need for me to prosecute a case where I absolutely am certain the guy is not guilty, and I won't go into court unless I'm certain the guy is guilty.

That's my job, to obtain justice, and if I know he's guilty I'll prosecute the case to the fullest extent of my abilities and the people of the State of Missouri deserve that, and I don't apologize for that.

But, I'll only do it if I know he's guilty.

[Defense counsel]: Your Honor, I'll object to that whole thing.

THE COURT: Sustained.

[Defense counsel]: I would ask that the jury be instructed to disregard it and move for a mistrial on—

THE COURT: The jury will be instructed to disregard the last comments of counsel. I will overrule your motion for mistrial.

Defendant contends the state's argument "implied to the jury that the prosecuting attorney had special knowledge of facts which, if the jury but knew those facts, would cause the jury to return a verdict of guilty." Defendant acknowledges his claims asserted in this point were not preserved for appellate review, because those claims were not raised in his motion for new trial. Accordingly, our review is limited to determining whether the trial court's rulings constituted plain error affecting substantial justice and resulting in manifest injustice or a miscarriage of justice. Rule 30.20.

The prosecutor's argument was retaliatory in nature. Defendant concedes, "To the extent that the prosecutor's argument addressed *only* the question of whether the prosecutor's job is to win cases, that argument was not improper." (Defendant's emphasis.) Defendant asserts, however, that "once the prosecutor stepped into the realm of his personal beliefs as to the guilt or innocence of any defendant, that argument became improper and an objection would properly be sustained."

Although "[a]rgument in retaliation may go further than would be allowed in the first instance," *State v. Talbert*, 800 S.W.2d 748, 749 (Mo.App.1990), "[t]here are limits as to how far the prosecutor can go in retaliation." *State v. Evans*, 820 S.W.2d 545, 547 (Mo.App.1991).

In *Evans* this court reversed the defendant's conviction and remanded for a new trial in light of the prosecutor's "deliberate and prejudicial statement that if Defendant were innocent he would not bring a charge and would not try the case...." *Id.* at 548. We held, "It is improper for the prosecutor to express his belief of a defen-

dant's guilt to the jury in such a way that it implies knowledge on his part of facts not in evidence pointing to the [d]efendant's guilt." *Id.* at 547.

There is no indication in *Evans* that review of the claim was limited to plain error. Therefore, *Evans* does not control our plain error review of the present case. "[A]lleged errors in closing arguments will not justify relief under plain error unless they are determined to have a decisive effect on the jury." *State v. Motley*, 740 S.W.2d 313, 316 (Mo.App.1987). We do not find the prosecutor's argument had such a decisive effect. Therefore, no manifest injustice resulted from the trial court's ruling on defendant's initial objection and the denial of defendant's request for a mistrial. Finding no plain error, we deny defendant's second point.

■ In his third point, defendant contends the trial court abused its discretion in overruling his objections "to all evidence and references to DNA testing, and in permitting the admission of evidence that [A.B.] was pregnant and had an abortion...."

The state introduced evidence that subsequent to the last incident of sexual intercourse, A.B. underwent a medical examination during which it was determined she was pregnant. An expert testified on behalf of the state that following an abortion, DNA testing was performed on A.B.'s blood, defendant's blood, and tissue from the aborted fetus. In the expert's opinion, the test results showed defendant was the father of the aborted fetus.

Defendant first asserts that "all references to the pregnancy, abortion, and paternity of the fetus were irrelevant to the issue of whether Appellant engaged in sexual intercourse or deviate sexual intercourse with [A.B.] against her will[,]" because defense counsel "offered to stipulate that Appellant and [A.B.] had engaged in sexual relations and informed the jury on opening statement that Appellant did not deny the intercourse." "The only issue remaining," defendant argues, "was whether the acts were consensual."

To find defendant guilty of rape the jury had to find and believe, *inter alia*, that defendant had sexual intercourse with A.B. The state's evidence regarding A.B.'s pregnancy, the source of fetal tissue, and the results of the DNA testing established that element of the crime. Although defendant, through defense counsel, admitted and offered to stipulate that he had sexual intercourse with A.B., " 'the right of the state to offer and to have received evidence which is relevant and material cannot be taken away by an offer for stipulation.' " *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983) (quoting *State v. Holmes*, 609 S.W.2d 132, 135 (Mo. banc 1980)). "As the state must sustain its burden it should not be unduly limited as to the manner of satisfying this quantum of proof." *Clemons*, 643 S.W.2d at 805. Accordingly, the evidence was relevant to establish defendant committed the rape as charged.

■ Defendant also argues the evidence was inadmissible because "its probative value is greatly outweighed by its prejudicial effect." Relevant evidence should be excluded "if it brings into a case matters which cause prejudice wholly disproportionate to the value and usefulness of the offered evidence...." *State v. Pollard*, 719 S.W.2d 38, 39 (Mo.App.1986). However, "[w]hether such offered evidence should be excluded is a matter for the trial court's discretion." *Id.*

Given the nature of the crime, and the victim's testimony regarding the acts of sexual intercourse and sodomy, the evidence of pregnancy, abortion, and paternity of the fetus did not cause "prejudice wholly disproportionate to the value and usefulness of the offered evidence...." *Id.* Defense counsel objected to some, but not all, references to A.B.'s pregnancy, the abortion, and various aspects of the DNA testing. Accordingly, defendant acknowledges this claim may not have been properly preserved. However, we have carefully reviewed this point and find the trial court did not abuse its discretion in admitting the challenged evidence. Point three is denied.

Defendant's fourth point alleges the trial court plainly erred in submitting an in-

struction patterned after MAI–CR 3d 302.-04. Defendant asserts the definition of the term, "reasonable doubt," in that instruction "allowed the jury to convict appellant based on a quantum of proof that is less than 'beyond a reasonable doubt[.]'" Defendant recognizes this claim was not preserved for our review, but he contends the trial court's action constituted plain error entitling him to relief.

In light of our supreme court's decisions in *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), and *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991), we find no error in the submission of MAI–CR 3d 302.04. *See State v. Blue*, 811 S.W.2d 405, 410 (Mo.App.1991). Defendant's request to transfer this case to the Missouri Supreme Court for reconsideration of *Antwine* in light of *Cage v. Louisiana*, — U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), is denied. Our supreme court has reconsidered and reaffirmed its holding in *Antwine*. *Griffin*, 818 S.W.2d at 282. Point four is denied.

In his fifth point, defendant contends the motion court erred in denying his Rule 29.15 motion for relief without granting an evidentiary hearing. Under this point, defendant claims defense counsel was ineffective in five respects.

■ Our review of a Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous." *Norfolk v. State*, 783 S.W.2d 439, 440 (Mo.App. 1990); Rule 29.15(j). The motion court is not required to grant an evidentiary hearing if it determines "the motion and the files and records of the case conclusively show that the movant is entitled to no relief...." Rule 29.15(g). "[A]n evidentiary hearing is warranted only if: (1) the Rule 29.15 motion alleges *facts*, not conclusions, warranting relief; (2) the facts alleged raise matters unrefuted by the files and record of the case; and (3) the matters complained of resulted in prejudice to appellant's defense." *State v. Fitzgerald*, 781 S.W.2d 174, 188 (Mo.App.1989).

■ Defendant first contends he was entitled to an evidentiary hearing on his claim that trial counsel "failed to timely and properly object to all references to the fact that the sexual acts charged resulted in [A.B.] becoming pregnant and obtaining an abortion." The motion court found the evidence was "clearly admissible and that the failure to object to admissible evidence does not warrant post conviction relief." As noted in our discussion of defendant's third point, the challenged evidence was admissible. Thus, the motion court's finding is not clearly erroneous. "Counsel has no duty to object to admissible evidence and failure to do so does not establish ineffective assistance of counsel warranting postconviction relief." *Plant v. State*, 781 S.W.2d 245, 247 (Mo.App.1989). The motion court did not err in denying defendant an evidentiary hearing on this issue.

■ Defendant next contends defense counsel was ineffective in "failing to introduce evidence to support the defense that appellant and [A.B.] engaged in only one act of sexual intercourse and that the act was consensual," and in "advising appellant not to testify on his own behalf after informing the jury on opening statement that appellant would testify."

The motion court found defendant's contention that defense counsel failed to introduce evidence to support the defense of consent did not state a cause of action upon which relief could be granted. That finding is not clearly erroneous in light of the fact that defendant's motion failed to allege what evidence, aside from his own testimony, existed to support that defense.

■ Further, the motion court found, "Movant, after consulting with his trial counsel, decided it was in his best interest not to testify in this cause." The motion court noted that "Movant had a prior conviction for raping another stepdaughter discoverable by the jury only upon his testimony." Thus, the motion court concluded, movant failed to demonstrate how he was prejudiced by defense counsel's advice that he not testify. The motion court further concluded, "The determination of whether Movant should testify or not is a matter of

trial strategy," and movant "failed to state a cause of action upon which relief can be granted."

The record demonstrates that defense counsel's advice that defendant not testify was clearly a matter of trial strategy. After the defense rested its case, but prior to closing arguments, the trial court questioned defendant and defense counsel regarding defendant's decision not to testify. Defense counsel stated he had explained to defendant all facts and circumstances surrounding the case and the ramifications if he did not testify.

Defendant stated that the decision not to testify "was an agreement we had. We felt it was best that I not testify." Defendant stated he understood the decision not to testify was in his best interest and he agreed with that decision.

Accordingly, the files and records of the case demonstrate that defense counsel's advice was a matter of trial strategy. Further, as the motion court noted, in light of defendant's previous conviction the advice not to testify did not result in prejudice to defendant's defense. Barring exceptional circumstances, defendant's claim that defense counsel was ineffective in advising him to not testify is not grounds for post-conviction relief. *Halsip v. State*, 717 S.W.2d 533, 538 (Mo.App.1986). The record demonstrates defense counsel developed the defense of consent through cross-examination of A.B. We find no exceptional circumstances; therefore, defendant was not entitled to an evidentiary hearing on this claim.

■ Defendant alleges he should have been granted an evidentiary hearing on his claim that defense counsel was ineffective in "inquiring into [A.B.'s] prior sexual history, which invited the state to attack defense counsel on closing argument."

During cross-examination of A.B., defense counsel asked, "The couple of incidents that you talked about already today those weren't the first times that you ever had sex, were they?" The state objected and the defense counsel argued to the court:

[Defense counsel]: "The whole defense is consent. The defense being consent. I'm just asking the question to establish that she had consentual [sic] sex with this man."
THE COURT: I can't hear you. Something about defense?
[Defense counsel]: We're trying to establish that she in effect participated in consentual [sic] sexual activities. That's all I ask.
THE COURT: That she actually consented to the sexual relations with the Defendant, is that what you are getting at?
[Defense counsel]: Right.
THE COURT: Why would you want to ask her—you mean you want to ask her did she have prior sex with him?
[Defense counsel]: Yes; prior to this complaining date.

After further discussion, the trial court sustained the objection and instructed the jury to disregard the question. It is evident from the quoted portion of the transcript, however, that defense counsel intended the question to relate to prior sexual acts between A.B. and defendant so as to support the defense of consent. Thus, the motion court's finding that the inquiry was a matter of trial strategy is not clearly erroneous.

■ Defendant's final allegation asserts he was entitled to an evidentiary hearing, because trial counsel was ineffective in "failing to timely object to and preserve in a motion for new trial that statements of [A.B.] contained in medical records were inadmissible hearsay and a legal conclusion." Appellant contends trial counsel should have objected to the records because "they contained statements that [A.B.] was 'raped'," and the statements "constitute hearsay and a legal conclusion which was the ultimate issue to be decided by the jury."

The motion court found that "the mere failure to make objections does not constitute ineffective assistance of counsel. This is particularly true where as in this instance the proferred evidence is clearly admissible." The motion court's finding is not clearly erroneous. "Counsel is not in-

effective for failing to make meritless objections." *Taylor v. State,* 782 S.W.2d 741, 743 (Mo.App.1989). "Medical records are admissible as business records," and "[m]edical history necessary for diagnosis and treatment is encompassed within this hearsay exception." *State v. Moore,* 721 S.W.2d 141, 143 (Mo.App.1986). The treating physician testified the medical history which contained the information defendant alleges was inadmissible, was taken to aid the physician in treating A.B.

Further, "even if the full history were not necessary for diagnosis its admission is not error if other evidence established the same facts." *Id.,* at 144. The victim testified as to what had occurred, thus other evidence established the same facts set forth in the medical records. Defendant's fifth point is denied.

The judgments of the trial court and motion court are affirmed.

SMITH, P.J., and KAROHL, J., concur.