STATE of Missouri, Respondent,

v.

Harry GIVENS, Appellant,

Harry GIVENS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 59727, 61565.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 20, 1993.

John Munson Morris, III, Atty. Gen., Rudolph Rhodes, Asst. Atty. Gen., Jefferson City, for respondent.

Raymond Legg, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Appellant, Harry Givens, appeals his jury convictions for two counts of sodomy, § 566.060 R.S.Mo. (1986) (all statutory references are to R.S.Mo.1986 unless otherwise noted), and one count of first degree sexual abuse, § 566.100, for which he received consecutive terms of fifteen years for each sodomy count and a concurrent term of seven years on the sexual abuse count. He was charged and sentenced as a prior and persistent offender under §§ 558.016 and 557.036.4, and as a persistent offender under § 558.019 R.S.Mo. (Cum.Supp.1989). He also appeals the denial of his post-conviction relief (Rule 29.15) motion after an evidentiary hearing.

On appeal, appellant raises numerous points claiming essentially that the trial court erred in: (1) failing to declare a mistrial, **sua sponte,** following the state's closing argument during which the prosecutor read an essay about the lasting effects of childhood sexual abuse and discussed the law's failure throughout history to protect children; (2) allowing the state to impeach appellant regarding his 1950 and 1956 convictions, admitting the record of his 1950 conviction in evidence, and allowing the state to examine him about statements he made during a pretrial mental examination; (3) overruling his motion to strike the prior and persistent offender allegation under § 558.019 (Cum.Supp.1989) from the amended information and using his 1950 and 1956 convictions for purposes of finding him a prior and persistent offender under §§ 558.016 and 558.019 (Cum.Supp. 1989); (4) denying his disclosure request seeking production of the mental health records of two of the state's witnesses; (5) admitting testimony concerning sexual acts with which he was not charged; (6) allowing cross-examination of appellant's character witnesses during which the prosecutor alluded to appellant as a "child molester" and suggested that one of the witnesses was associated with child molesters; and (7) submitting MAI–CR3d 302.04 defining "reasonable doubt." He also claims the motion court erred in denying his Rule 29.15 motion based on ineffective assistance of counsel. We affirm.

Appellant does not challenge the sufficiency of the evidence, so we briefly review the evidence in a light most favorable to the verdicts. The victim, T.K.G., appellant's daughter who was eleven years old at the time of the charged offenses, slept in a large bed with her two sisters and her stepsister. On one occasion, appellant called the victim into the bathroom and made her hold his penis. On other occasions, appellant came into her bedroom at night, pulled her to the foot of the bed or on to the floor and sexually molested her by fondling her breasts and vagina, having

her perform oral sex on him, and/or rubbing his penis on her bottom. When she tried to tell him to stop, he would smack her in the face. He also threatened to kill her, her sisters and her mother if she told anybody what he was doing. T.K.G., one of her sisters, and her stepsister all testified that appellant also performed similar acts on each of them on numerous occasions. Eventually the girls told their mother, Mrs. Givens, what had occurred, and she reported it to the police.

Appellant has raised numerous points on appeal, some of which we have combined for purposes of clarity in our discussion. In his first and second points on appeal, appellant contends that the trial court should have declared a mistrial, **sua sponte,** after improprieties in the state's closing argument. In the opening portion of his argument, the prosecutor read to the jury an essay entitled *Warrior Child,* which describes the long term negative effects of sexual abuse on children. The prosecutor introduced the essay by arguing the future effects of appellant's conduct on the victim and her sisters. In the rebuttal portion of his argument the prosecutor argued about the failure of society, throughout history, to protect children, and about his fear that this would be another case where the legal system fails to protect children. He argued that appellant gets a trial by a jury of his peers, but the children do not.

▆ Appellant made no objection to this argument at trial, and failed to raise the points in his motion for new trial. Therefore, these points were not preserved for review. *State v. Stallings,* 812 S.W.2d 772, 778[7, 8] (Mo.App.1991). Since these points were not preserved, we review only for plain error. *State v. Stepter,* 794 S.W.2d 649, 655[11] (Mo. banc 1990). Relief is granted under plain error only when the error so substantially affects the rights of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Burgess,* 800 S.W.2d 743, 746[7] (Mo. banc 1990).

▆ The prosecutor should not express his belief of appellant's guilt to the jury in such a way that it implies knowledge on his part of facts not in evidence pointing to appellant's guilt. *State v. Evans,* 820 S.W.2d 545, 547[2] (Mo.App.1991). Nor should he make any argument which would inflame the passions or prejudices of the jury. *State v. Douglas,* 720 S.W.2d 390, 393[2] (Mo.App.1986). The declaration of a mistrial, however, is a drastic remedy that should be employed in those extraordinary circumstances in which prejudice to the defendant cannot otherwise be removed. *Burgess,* at 746[7]. The decision to declare a mistrial rests largely in the discretion of the trial court which, having had an opportunity to observe the incident, is better able to determine whether prejudice necessitating a mistrial occurred. *Id.* For that reason, its decision will rarely be disturbed on appeal. *Id.*

▆ Here, the record reveals sufficient evidence of guilt to support appellant's conviction. A reading of the record reflects that the challenged portions of the prosecutor's argument were not based on evidence contained in the record and were thus clearly improper. Relief should rarely be granted, however, on assertions of plain error as to closing argument, for where no objection to the argument is lodged, trial strategy is an important consideration and such assertions are generally denied without explication. *State v. Newlon,* 627 S.W.2d 606, 616[12–14] (Mo. banc 1982), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). This is true because in the absence of an objection, request for admonishment to disregard, or other specific request for relief the trial court's options are narrowed to uninvited interference with summation and a corresponding increase in the risk of error by such interference. *Id.* Improper argument will constitute plain error only if it has a decisive effect on the jury. *State v. Murphy,* 592 S.W.2d 727, 732[9] (Mo. banc 1979). Here, based on the record, we cannot say that the challenged arguments had such an effect on the jury. Points denied.

Appellant next raises several points relating to his prior convictions. Prior to trial, the state established that appellant

was convicted, upon guilty pleas, of robbery with a gun in Illinois in 1950 and armed robbery in Wisconsin in 1956, by introducing authenticated records of those convictions. The record here indicates that he was not represented by counsel on either occasion.

■ Appellant asserts first that the state should not have been allowed to impeach him with these prior convictions because they were too remote in time to be used. He acknowledges that Missouri does not place a limit on the age of convictions used to impeach, *State v. Rice,* 603 S.W.2d 83, 84–85 (Mo.App.1980), but urges this court to reconsider that rule in light of Federal Rule 609(b) which places a general ten-year time limit on prior convictions which can be used for impeachment, in that the federal approach is more in keeping with a defendant's due process rights. Since appellant did not object to the use of these prior convictions for impeachment at trial, or preserve the issue in his motion for new trial, we review only for plain error.

The use of prior convictions for impeachment is governed by § 491.050 which places no limit on the age of convictions used for impeachment. We decline to add to the statute a time limit, as any such change should come from the legislature. *State v. Williams,* 603 S.W.2d 562, 568[11] (Mo.1980).

■ Appellant also asserts that the trial court erred in admitting his entire Illinois conviction record into evidence, including the guilty plea transcript, because this unduly emphasized the prior conviction. He contends that the purpose of impeaching his credibility had been accomplished when he admitted to pleading guilty, and that the state went beyond proper impeachment when the prosecutor was allowed to put the complete record of the prior conviction before the jury. Since no objection to the admission of the conviction record was made at trial, we review only for plain error.

Proof of prior criminal convictions may be either by the record of the conviction or by cross-examination, § 491.050, and the trial court has discretion to permit the state to test and challenge denials of guilt and statements designed to blunt the impact of prior convictions. *State v. Jones,* 809 S.W.2d 45, 46–47[4] (Mo.App.1991). Here, at trial, appellant admitted the guilty plea, but denied committing the charged offense saying that he pled guilty because he had been beaten. Thus, we do not find admission of the Illinois conviction record to be an abuse of the trial court's discretion.

■ In other points relating to his prior convictions, appellant claims that the trial court erred in overruling his pre-trial motion to strike from the amended information the allegation that he was a prior and persistent offender under § 558.019 R.S.Mo. (Cum.Supp.1989) based on his 1950 and 1956 convictions, because this section prohibits the use of prior convictions more than 25 years old for enhancement purposes. Based on proof of these convictions, the trial court found appellant to be a "prior persistent offender." Appellant preserved this issue in his motion for new trial.

Section 558.019.6 (Cum.Supp.1989) prohibits classification of a defendant as a "prior offender" if a period of twenty-five years has passed since a conviction or release from confinement, whichever is later. Appellant contends that this section likewise prohibits classification of him as a "persistent offender" based on convictions more than twenty-five years old. Our Supreme Court addressed this issue in *State v. McDaris,* 843 S.W.2d 369 (Mo. banc 1992), and held that the plain language of § 558.019.6 (Cum.Supp.1989) dealing with a "prior offender" meant "prior offender" as defined in § 558.019.4(1) (Cum.Supp.1989), and that § 558.019.6 (Cum.Supp.1989) "excuses an offender who committed *one and only one* offense previously, and then maintained a long period of rehabilitation." *Id.,* at 373[3]. (Emphasis added.)

Here, appellant was found to be a persistent offender based on proof of two previous convictions. Thus, under *McDaris,* the twenty-five year limitation on convictions used for enhancement would not be applicable. The trial court did not err in deny-

ing appellant's motion to strike the prior and persistent offender allegations from the information.

■ Appellant also claims the trial court erred in finding him a prior and persistent offender under § 558.016, because the 1950 and 1956 convictions used for that purpose are too remote in time to be used. Section 558.016, however, does not place time limits on the occurrence of prior convictions used for enhancement purposes. *State v. Watson,* 716 S.W.2d 398, 402[9] (Mo.App.1986). Thus, the trial court did not err in finding appellant to be a persistent offender under that section.

Appellant also contends that the trial court erred in using his prior convictions to find him a prior and persistent offender, and erred in allowing the state to use these convictions for impeachment purposes, because there was no determination that he had been represented by counsel during the prior conviction proceedings or that he had made a voluntary, knowing and intelligent waiver of counsel. Without such a showing, appellant contends, this case should be remanded to the trial court for a determination as to whether he was represented by counsel or validly waived counsel at his 1950 and 1956 proceedings. This issue was not raised in the trial court, so we review only for plain error.

■ Convictions obtained without the assistance of counsel cannot be used to enhance punishment. *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); *McDaris,* at 374. Nor may they be used for impeachment purposes. *Loper v. Beto,* 405 U.S. 473, 483, 92 S.Ct. 1014, 1019, 31 L.Ed.2d 374, 381–82 (1972).

■ Appellant asserts that State's Exhibits 1 & 3, which contain a transcript of the guilty plea proceeding in Illinois, show he did not have the benefit of counsel at the Illinois guilty plea proceeding. The transcript of that proceeding, however, shows that appellant, when questioned by the trial judge, stated that he did not desire counsel, that he understood that the court would appoint counsel if appellant so requested, and that he understood that under

a guilty plea the court might sentence him to the Illinois State Penitentiary for a minimum of 1 year and a maximum of life. Thus, the record of this conviction, reasonably construed, shows appellant was advised of his right to counsel, and knowingly and voluntarily waived that right. *See, State v. Welty,* 729 S.W.2d 594, 602 (Mo. App.1987).

■ Appellant also asserts that State's Exhibits 2 & 4 do not indicate that he was represented by counsel in his Wisconsin conviction. These exhibits contain a certificate of appellant's conviction and sentence for assault and armed robbery in the municipal court of Milwaukee County, Wisconsin, but do not indicate whether appellant was represented by counsel in that cause, or whether he knowingly and voluntarily waived that right. Representation by counsel or waiver thereof cannot be presumed from a silent record. *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Welty,* at 602. On cross-examination, however, appellant stated that he pled guilty to the charge of armed robbery in Wisconsin because he was guilty, and also stated that he had a chance to have a lawyer at those proceedings. Thus, the record before us is not silent, and reasonably indicates that appellant waived his right to counsel on the previous conviction in Wisconsin. In the absence of contravening evidence, the use of these convictions to impeach appellant, and to sentence appellant as a persistent offender, were sufficiently supported. *Welty,* at 602. Point denied.

Appellant next claims trial court error in allowing the prosecutor to cross-examine him about statements he made during his pretrial mental examination because this was a violation of his right under § 552.-020.12 not to have statements made during a competency evaluation used as evidence of guilt. No objection was made at trial and the point was not preserved in his motion for new trial. We therefore review only for plain error.

■ Section 552.020.12 provides that "no statement made by the accused in the course of any examination or treatment

pursuant to this section ... shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding...." During his opening statement, defense counsel stated that the reason appellant's wife was "sending him up" was because he was impotent. On cross-examination, the prosecutor asked appellant six questions regarding the psychiatric evaluation, four of which pertained to his marital problems and impotency. Appellant was asked about the fact that during the psychiatric evaluation he did not mention any problem of impotence, and he was also asked about what he stated during the examination relating to problems he was having in his marriage. Appellant asserts that manifest injustice resulted from this questioning because without his statements the jury may have believed his denial of the charges against him, and because the jury, upon learning of his prior mental commitment, may have assumed that this commitment meant he was "crazy" and thus likely to have committed the charged offenses.

We find no violation of § 552.020.12, as we find that the elicited information did not bear on appellant's guilt of the crime charged. In any event, after reviewing the record, noting that the information revealed through the prosecutor's questions was not subsequently highlighted in any manner, we find that no prejudice resulting in manifest injustice occurred. Point denied.

■ Appellant next alleges error in the trial court's denial of his motion for the production of the psychiatric records of his wife and stepdaughter. Appellant contends that his wife's records contain exculpatory evidence and that his stepdaughter's records would establish that she had made prior false accusations of sexual misconduct against him. Both the wife and stepdaughter were endorsed as witnesses by the state, and the stepdaughter was alleged to have been a victim at one time although she was not named as a victim in this case. Appellant claims that his wife coerced the children to make false accusations against him.

Prior to trial a hearing was held on appellant's request at which the custodian of the records appeared with the records in question. The prosecutor objected, asserting the statutory medical privilege and that both were endorsed witnesses. The trial court stated that it lacked authority to order production of the records. Although appellant requested the court to examine the records to determine what portions, if any, should be available, the court dismissed the records custodian without examining the records, in camera, or otherwise.

■ Appellant failed to produce the custodian with the records at trial and to ask the trial court to admit the records, and did not make an offer of proof as to what the records would show. Absent an offer of proof, appellant cannot complain about the exclusion of evidence. *Spencer v. State,* 795 S.W.2d 636, 638[2] (Mo.App. 1990). He is required to offer this evidence at trial to provide the trial judge an opportunity to reconsider the prior ruling against the backdrop of the evidence actually adduced at trial. *State v. Vinzant,* 716 S.W.2d 367, 370[6–7] (Mo.App.1986). Absent an offer of proof at trial, our review is only for plain error resulting in a manifest injustice.

The records are not a part of the record on appeal. Therefore, we cannot say that the trial court's denial of the motion to produce resulted in manifest injustice. Point denied.

■ Appellant next alleges trial court error in admitting testimony concerning sexual acts for which he was not charged. He claims this testimony constituted evidence of other crimes which had no legitimate tendency to establish his guilt of the charged offenses. The state called the victim's sister and stepsister as witnesses to testify to the fact that appellant had fondled them and performed sex acts on them like those for which he was charged. Here, the victim, in addition to her testimony as to the charged acts, testified to witnessing appellant perform similar acts on her sisters and stepsister. Appellant objected to this testimony at trial, and pre-

served that objection in his motion for new trial.

Generally, evidence of uncharged crimes is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Bernard*, 849 S.W.2d 10, 12–13 (Mo. banc 1993). However, evidence of other uncharged misconduct may be admissible if it has a legitimate tendency to prove the specific crime charged in establishing: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial. *Id.* Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant. *Id.* The evidence is logically relevant if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and the evidence is legally relevant if its probative value outweighs its prejudicial effect. *Id.* The balancing of the probative value and prejudicial effect rests within the sound discretion of the trial court. *Id.*

In *Bernard*, our Supreme Court expressly adopted an exception to the rule prohibiting evidence of prior uncharged misconduct known as the "signature **modus operandi**/corroboration exception." *Id.*, at 17.

The signature **modus operandi**/corroboration exception approximates the long established, well recognized exception that allows evidence of prior uncharged misconduct for the purpose of proving the identity of the wrongdoer. If the identity of the wrongdoer is at issue, the identity exception permits the state to show the defendant as the culprit who has committed the sexual crime charged by showing that the defendant committed other uncharged sexual acts that are sufficiently similar to the crime charged in time, place and method.

*Id.*, at 17. Here, appellant's defense was that he did not commit the acts with which he was charged. Identity was not an issue. Our Supreme Court in *Bernard*, however, expounded, as follows, on a further use of this exception for purposes of corroboration:

In the context of corroboration, evidence of prior crimes is logically relevant in that it has a legitimate tendency to prove a material fact in the case by corroborating the testimony of the victim as to sexual assault. *See [State v. ] Sladek*, 835 S.W.2d [308] at 314 [ (Mo.1992) ]. (Thomas, J. concurring); *see also State v. Garner*, 481 S.W.2d [239] at 241 [ (Mo. 1972) ]. Because of the secretive nature of the crime in most cases involving sexual abuse or molestation of a child by an adult, the only eyewitnesses to the crime are the defendant and the victim. Imwinkelreid, **Uncharged Misconduct Evidence**, § 4.13 (1990). The trial often becomes a credibility contest between the defendant and the victim. *Id. Evidence of prior crimes in such situations, is, therefore, probative.*

Evidence of prior crimes is legally relevant, thus admissible, however, only if the probative value of the evidence outweighs its prejudicial effect. *See Sladek*, 835 S.W.2d at 314–15 (Thomas, J. concurring).

\*    \*    \*    \*    \*    \*

For corroboration evidence to be of sufficiently increased probative value so as to outweigh its prejudicial effect, the evidence must be more than merely similar in nature to the sexual assault for which the defendant is charged. *See Sladek*, 835 S.W.2d at 317. (Thomas, J. concurring). Evidence of prior sexual misconduct that corroborates the testimony of the victim should be nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's **modus operandi.**

*Id.*, at 17–18 (Emphasis added). Here, we find that the evidence of uncharged misconduct meets the standards of admissibility in the context of corroboration under *Bernard*. The acts were similar and distinc-

tive enough to qualify as a signature of appellant's **modus operandi**. The victim, T.K.G., testified that appellant would come into the girls' bedroom at night, pull her down to the foot of the bed, fondle her, remove her pants and underwear, rub his penis on her bottom and on one occasion had her perform oral sex on him. On one occasion, appellant called her into the bathroom and had her hold his penis. She testified that appellant would smack her if she tried to tell him not to do it, and that he threatened to kill the girls and their mother if she told anyone what he was doing. She also testified that she saw appellant do the same thing to the other girls as he had done to her.

Another witness, E.G., a daughter of appellant, testified that appellant would come into the girls' bedroom at night, pull her to the foot of the bed, fondle her vagina and bottom, and leave her to sleep on the floor at the foot of the bed. She testified that appellant once called her into the bathroom and made her hold his penis, and also that he threatened to kill her, her mother and her sisters if she told anyone about the things he was doing.

The third witness, T.A., appellant's stepdaughter, testified that appellant would come into the girls' bedroom at night, and fondle her breasts, vagina and bottom. She also testified to waking up and seeing appellant "playing" with E.G. at the end of the bed near the floor, and then a couple of days later, waking up to see appellant pulling another sister, P.G., off the bed and onto the floor. At that time she heard P.G. tell appellant to stop or she would tell her mother, and appellant threatened that if she told her mother that he would kill her mother and the girls.

We find that this evidence is probative on the issue of appellant's guilt of the crime charged in that the uncharged acts of sexual abuse are similar enough in **modus operandi** to corroborate the evidence of the acts for which appellant was charged. *Bernard*, at 17–18. The strains of commonality in the testimony of all the witnesses show that appellant would (1) come into his daughters' bedroom at night; (2) select one of them and pull them down to the foot of the bed or onto the floor; (3) fondle and sexually molest them in the presence of the other girls; (4) physically abuse them if they resisted his efforts; and (5) threaten to kill them and their mother if they told anyone what he was doing.

Appellant's conduct involving his preference for fondling and sexually molesting his daughters at the foot of their bed with the other daughters present in the same bed, through force of physical abuse, and then hiding his actions through threats on the life of his daughters and their mother, is more than similar in nature to the sexual abuse with which he is charged. Appellant's conduct acts as a "signature" of his involvement in all of these acts. *Bernard*, at 19. This evidence shows that appellant's method of operation was sufficiently distinct so as to "earmark" it as the conduct of the accused and corroborate the victim's testimony regarding the charged offenses. *Id.* Thus the evidence is logically and legally relevant as to appellant's guilt and is admissible. *Id.*, at 19. The trial court did not err in admitting this evidence at trial. Point denied.

█ In his next point, appellant alleges trial court error in allowing the prosecutor to cross-examine three of appellant's character witnesses as to what a child molester looked like and whether appellant looked like a child molester. Appellant claims this was improper impeachment because the questions injected into the jurors' minds the improper consideration of whether appellant looked like a child molester and also improperly labeled appellant as a child molester. No objection was made at trial, the point was not preserved, and we review only for plain error.

These three witnesses essentially testified that in their opinion appellant was a good parent and that he had a reputation for being a good parent. This placed appellant's character in issue. *State v. Reilly*, 674 S.W.2d 530, 532[1] (Mo. banc 1984). The prosecution was within its right to cross-examine these witnesses in a manner which tested their credibility and their ability to assess appellant's character by deter-

mining whether the witnesses were capable of discerning what to look for in someone who sexually abused or molested his children. The jury knew full well that defendant was charged with acts of sexual abuse on his daughters, and the prosecutor did not direct the term "child molester" as an aspersion on appellant. In the context of the charges and evidence, and in the context in which the prosecutor's questions were asked, we do not find the use of the term "child molester" so inflammatory as to result in manifest injustice.

■ Appellant also alleges that the trial court erred in allowing the prosecutor's cross examination of a fourth witness, James Watkins, called by appellant to testify that he saw appellant's wife shortly after appellant was arrested. The witness testified that at that time he asked Mrs. Givens why she didn't take appellant's children to see him in jail, and Mrs. Givens responded, "The welfare won't let me." The witness testified that he then heard the victim telling her mother (appellant's wife), "Mom, if you hadn't made us lie, dad wouldn't have been there." The witness did not testify on direct examination as to appellant's character, but on cross examination stated that he had known appellant too long to believe he had committed the charged acts, that he did not believe appellant was guilty of the charged acts, and that he had formed an opinion about whether appellant was a child molester. The witness then stated, in response to the prosecutor's questions, that he had no idea what a child molester looked like, or what one would expect to see in someone who would molest their children. The prosecutor challenged this last statement of the witness by asking if he knew an individual, identified by the witness as his brother-in-law, who had been convicted for molesting children, and by asking the witness if he had attended the trial of another individual charged with child molestation.

Appellant claims this latter line of cross examination should not have been allowed because it improperly associated appellant with these other convicted persons in the jury's mind, that it was unnecessary, and

its prejudicial effect outweighed any probative value it may have had. No objection was made at trial, the point was not preserved, and we review only for plain error.

The record shows that it was the witness, not appellant, who was associated with these other convicted persons through the prosecutor's questions. The record does not reflect that the prosecutor drew any association between appellant and the convicted persons about whom the witness was questioned. We perceive no manifest injustice. Point denied.

■ Appellant next complains that the trial court erred in submitting MAI–CR3d 302.04, defining "reasonable doubt." He asserts that the "firmly convinced" definition of reasonable doubt contained in the instruction fails to impress upon the jury the requisite burden in a criminal case as required by *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

Our Supreme Court has held that the term "firmly convinced" is "intended to assist lay jurors in their understanding of the legal phrase 'beyond a reasonable doubt' [and that] 'firmly convinced' is essentially synonymous with 'beyond a reasonable doubt'." *State v. Antwine*, 743 S.W.2d 51, 62–63[12] (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). This holding has not changed. *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993). The trial court did not err in submitting the instruction.

■ Finally, appellant contends the motion court erred in denying his Rule 29.15 motion, after an evidentiary hearing, because he was denied effective assistance of trial counsel in that his attorney failed to object to the prosecutor's reading of the essay *Warrior Child* during closing argument. This allegation of ineffective assistance of counsel was not contained in his pro se or amended Rule 29.15 motion.

Alternatively, appellant claims the motion court erred in denying his motion because post-conviction counsel was ineffective by failing to include in the amended motion an allegation that trial counsel was

ineffective in failing to object to the reading of the *Warrior Child* essay.

Review of the denial of appellant's Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves the reviewing court with a definite and firm impression that a mistake has been made. *State v. White*, 798 S.W.2d 694, 697[6] (Mo. banc 1990). Claims which are not presented to the motion court cannot be raised for the first time on appeal. *Amrine v. State*, 785 S.W.2d 531, 535[8] (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990).

Here, the allegation that trial counsel was ineffective for not objecting to the *Warrior Child* essay was not pleaded or testified to. Thus, the motion court was not clearly erroneous in not granting appellant's motion on a claim of ineffective assistance of counsel not raised.

As to appellant's claim of ineffective assistance of post-conviction counsel, the general rule is that allegations of ineffective assistance of post-conviction counsel are not cognizable on appeal. *Davis v. State*, 804 S.W.2d 31, 34[3–4] (Mo. App.1990). An exception is that a complete abandonment by motion counsel may necessitate a remand with appointment of new counsel. *Id.* Here, the record shows that motion counsel filed an amended motion and a hearing was held at which appellant and his trial counsel testified, and in which motion counsel took an active part. Appellant's post-conviction counsel did not abandon him.

Judgment affirmed.

CARL R. GAERTNER, P.J., and CRANE, J., concur.